UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
SEATTLE DIVISION

| | |
|---|---|
| STEPHEN G. NELSON, Derivatively on Behalf of AMAZON.COM, INC., <br><br> Plaintiff, <br><br> v. <br><br> JEFFREY P. BEZOS, ANDREW R. JASSY, BRIAN T. OLSAVSKY, DAVID H. CLARK, SHELLEY L. REYNOLDS, ADAM N. SELIPSKY, DAVID ZAPOLSKY, KEITH B. ALEXANDER, EDITH W. COOPER, JAMIE S. GORELICK, DANIEL P. HUTTENLOCHER, JUDITH A. MCGRATH, INDRA K. NOOYI, JONATHAN J. RUBINSTEIN, PATRICIA Q. STONESIFER, WENDELL P. WEEKS, TOM A. ALBERG, ROSALIND BREWER, AND THOMAS O. RYDER, <br><br> Defendants, <br><br> – and – <br><br> AMAZON.COM, INC., a Delaware Corporation, <br><br> Nominal Defendant. | Civil Action No. <br><br> VERIFIED STOCKHOLDER DERIVATIVE COMPLAINT <br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Stephen G. Nelson ("Plaintiff"), a citizen of Georgia, by his attorneys, submits this Verified Stockholder Derivative Complaint for Breach of Fiduciary Duty, Waste of Corporate Assets, and Unjust Enrichment.  Plaintiff alleges the following on information and belief, except as to the allegations specifically pertaining to Plaintiff which are based on personal knowledge.

## I.   INTRODUCTION

1.    This is a stockholder derivative action brought on behalf of and for the benefit of Amazon.com, Inc. ("Amazon" or the "Company"), against certain of its current and former officers and directors, seeking to remedy their breaches of fiduciary duty, waste of corporate assets, and unjust enrichment.  Defendants' actions, as set forth more fully herein, have caused substantial financial and reputational harm to Amazon.

2.    Amazon is one of the world's largest companies and includes businesses ranging from its well-known online retail business to grocery stores. The Company is a leading multinational technology company, specializing in e-commerce, cloud-based servicing, streaming and artificial intelligence.  It is considered one of the "Big Four" technology companies together with Alphabet (Google), Apple and Meta (Facebook).

3.    As a direct result of Defendants' unlawful course of conduct, Amazon is now the subject of multiple class action lawsuits under the Illinois Biometric Information Privacy Act, 740 ILCS 14/1 *et seq.* ("BIPA") (the "BIPA Class Actions"). and the Company has misled the investing public about its business and compliance.[1]  The BIPA Class Actions set forth claims on behalf of

---

[1] *See, e.g.*, *Cooper v. Amazon.com Inc et al*, No. 1:21CV04633 (N.D.Ill.), *Ragsdale v. Amazon Web Services, Inc.*, No. 1:20CV00560 (N.D.Ill.), *Naughton v. Amazon.com, Inc. et al*, No. 1:20CV06485 (N.D.Ill.), *Hryniewicki v. Amazon Web Services, Inc.*, No. 1:19CV07569 (N.D.Ill.), *Hogan v. Amazon.com Inc.*, No. 2:21CV00905 (W.D.Wash.), *McGoveran v. Amazon Web Services, Inc. et al*, No. 3:20CV00031 (S.D.Ill.), *Vance v. Amazon, Inc.*, No. 2:20CV1084 (W.D.Wash.);*Flores et al v. Amazon.com Inc et al*, No. 2:21CV00873 (W.D.Wash.), *Flores et al v. Amazon.com Inc et al*, No. 1:21CV04064 (N.D.Ill.),*Wilcosky v. Amazon.Com, Inc. et al*, No. 1:19CV05061 (N.D.Ill.), *Mayhall v. Amazon Web Services Inc et al*, No. 2:21CV01473 (W.D.Wash.), *Reid v. Amazon.com Inc. et al*, No. 1:21CV06010 (N.D.Ill.), *Schaeffer v. Amazon.com, Inc. et al*, No. 3:21CV01080 (S.D.Ill.), *McGoveran et al v. Amazon Web Services,*

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 2

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

numerous classes of consumers and employees asserting that, in direct violation of Illinois' BIPA statute, Amazon stored the biometric information of its employees, users, and its cloud-based clients' users, including minors, without informing them of these practices and without securing the users' written consent.  The class actions also assert that Amazon violated BIPA by failing to develop a written policy, available to the public, establishing a retention schedule and guidelines for users to permanently destroy biometric identifiers when the initial purpose for collection was satisfied.

4.      The Defendants named in this Complaint face liability to the Company for their misconduct, including, among other things:  (i) failing to maintain an adequate system of oversight, accounting controls and procedures, disclosure controls, and other internal controls, which were necessary to prevent or promptly correct violations of the law and improper statements made on the Company's behalf; (ii) failing to ensure the Company's compliance with relevant legal and regulatory requirements, including, but not limited to, requirements imposed under biometric privacy laws as well as state and federal securities laws; (iii) directly participating in the improper schemes and misconduct described herein; (iv) disregarding red flags indicating inadequate internal controls over compliance with biometric privacy laws and indicating violations privacy laws; and (v) affirmatively making, allowing to be made, and/or failing to correct improper statements in SEC filings relating to the Company's operations, internal controls, legal proceedings, privacy compliance, and risks (including financial, operational, legal, regulatory and enforcement risks).

5.      Due to the Amazon Board of Directors' (the "Board") knowledge of illegal conduct and involvement in the wrongdoing, its blatant failure to act (including to stop or correct violations of the law), its members' lack of independence, and the substantial likelihood of liability its

---

*Inc. et al,* No. 1:20CV01399 (D.Del.), *Svoboda v. Amazon.com Inc. et al*, No. 1:21CV05336 (N.D.Ill.), *Dorian v. Amazon Web Services, Inc.*, No. 2:22-cv-00269 (W.D.Wash.).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 3

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

members face, any demand upon the Board to rectify this wrongdoing would be a wasteful, useless and futile act.  Accordingly, Plaintiff brings this action to remedy the harm to Amazon caused by Defendants' faithless actions and inaction.

## II.   JURISDICTION AND VENUE

6.   This Court has jurisdiction under 28 U.S.C. § 1332.  Complete diversity among the parties exists and the amount in controversy exceeds $75,000, exclusive of interest and costs.

7.   This Court has jurisdiction over each named Defendant.

8.   Additionally, this Court has specific jurisdiction over each named Defendant herein because each Defendant is either a corporation that conducts business in and maintains operations in this District, or is an individual who has sufficient minimum contacts with this District so as to render the exercise of jurisdiction by the District Court permissible under traditional notions of fair play and substantial justice.

9.   Venue is proper in this Court pursuant to 28 U.S.C. §1391 because: (i) Amazon maintains executive offices in this District; (ii) one or more of the Defendants either resides in or maintains executive offices in this District; (iii) a substantial portion of the transactions and wrongs complained of herein, including the Defendants' primary participation in the wrongful acts detailed herein, and aiding and abetting and conspiracy in violation of fiduciary duties owed to Amazon occurred in this District; and (iv) Defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## III.   THE PARTIES

### A.   Plaintiff

10.   Plaintiff Stephen G. Nelson was stockholder of Amazon at the time of wrongdoing complained of, has continuously been a stockholder since that time, and is a current Amazon stockholder.

11.   Plaintiff is a citizen of Georgia.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 4

**B.      Nominal Defendant**

12.      Nominal Defendant Amazon.com, Inc. is a publicly-traded Delaware corporation with its principal executive offices located at 410 Terry Avenue North, Seattle, Washington.

13.      The Company's common stock trades on the NASDAQ under the ticker symbol "AMZN."  Amazon has over 515 million shares of common stock outstanding.

**C.      Defendants**

14.      Defendant Jeffrey P. Bezos ("Bezos") is the founder and Executive Chair of Amazon's Board of Directors.  Amazon has paid Defendant Bezos the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $81,840 | - | $1,600,000 | $1,681,840 |
| 2020 | $81,840 | - | $1,600,000 | $1,681,840 |
| 2019 | $81,840 | - | $1,600,000 | $1,681,840 |
| 2018 | $81,840 | - | $1,600,000 | $1,681,840 |

15.      Upon information and belief, Defendant Bezos is a citizen of the State of Washington.

16.      Defendant Andrew R. Jassy ("Jassy") is the President and Chief Executive Officer of Amazon and also serves on its Board of Directors.  He founded Amazon Web Services and served as CEO of from April 2016 to July 2021.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 5

17.     Amazon has paid Defendant Jassy the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $175,000 | $211,933,520 | $592,649 | $212,701,169 |
| 2020 | $175,000 | $35,639,068 | $34,381 | $35,848,449 |
| 2019 | $175,000 | - | $173,809 | $348,809 |
| 2018 | $175,000 | $19,466,434 | $91,232 | $9,732,666 |

18.     Upon information and belief, Defendant Jassy is a citizen of the State of Washington.

19.     Defendant Brian T. Olsavsky ("Olsavsky") is the Senior Vice President and Chief Financial Officer of Amazon.  Amazon has paid Defendant Olsavsky the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $160,000 | - | $3,200 | $163,200 |
| 2020 | $160,000 | $17,010,985 | $3,200 | $17,174,185 |
| 2019 | $160,000 | - | $3,200 | $163,200 |
| 2018 | $160,000 | $6,770,149 | $3,200 | $6,933,349 |

20.     Upon information and belief, Defendant Olsavsky is a citizen of the State of Washington.

21.     Defendant David H. Clark ("Clark") is the Chief Executive Officer of Worldwide Consumer.  Amazon has paid Defendant Clark the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $175,000 | $55,589,120 | $310,451 | $56,074,571 |
| 2020 | $160,000 | $46,121,888 | $6,783 | $46,288,671 |

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 6

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

22.     Upon information and belief, Defendant Clark is a citizen of the State of Texas.

23.     Defendant Shelley L. Reynolds ("Reynolds") is Amazon's Vice President, Worldwide Controller and Principal Accounting Officer.  Upon information and belief, Defendant Reynolds is a citizen of the State of Washington.

24.     Defendant Adam N. Selipsky ("Selipsky") is the Chief Executive Officer of Amazon Web Services.  Amazon has paid Defendant Selipsky the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $109,722 | $81,294,756 | $49,045 | $81,453,523 |

25.     Upon information and belief, Defendant Selipsky is a citizen of the State of Washington.

26.     Defendant David Zapolsky ("Zapolsky") is Amazon's Vice President, General Counsel and Secretary.  Amazon has paid Defendant Zapolsky the following compensation:

| Year | Salary | Stock Awards | All Other Compensation | Total |
|------|--------|--------------|------------------------|-------|
| 2021 | $160,000 | - | $3,200 | $163,200 |
| 2020 | $160,000 | $17,010,985 | $3,200 | $17,174,185 |

27.     Upon information and belief, Defendant Zapolsky is a citizen of the State of Washington.

28.     Defendant Keith B. Alexander ("Alexander") has served a director of the Company since September 2020.  In addition, he also serves as a member of the Audit Committee.  Amazon compensated Defendant Alexander at least $934,297 in Stock Awards in 2020.  Upon information and belief, Defendant Alexander is a citizen of the State of Michigan.

29.     Defendant Edith W. Cooper ("Cooper") has served as a director of the Company since September 2021.  In addition, she also serves as a member of the Leadership Development

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

and Compensation Committee.  Amazon compensated Defendant Cooper at least $958,171 in Stock Awards in 2021.  Upon information and belief, Defendant Cooper is a citizen of the State of Connecticut.

30.     Defendant Jamie S. Gorelick ("Gorelick") has served as a director of the Company since February 2012.  In addition, she also serves as Chair of the Nominating and Corporate Governance Committee.  Amazon compensated Defendant Gorelick at least $938,533 in Stock Awards in 2020 and $952,741 in Stock Awards in 2018.  Upon information and belief, Defendant Gorelick is a citizen of State of Maryland.

31.     Defendant Daniel P. Huttenlocher ("Huttenlocher") has served as a director of the Company since September 2016.  In addition, he also serves as a member of the Leadership Development and Compensation Committee.  Amazon compensated Defendant Huttenlocher at least $951,489 in Stock Awards in 2019.  Upon information and belief, Defendant Huttenlocher is a citizen of the State of New York.

32.     Defendant Judith A. McGrath ("McGrath") has served as a director of the Company since July 2014.  In addition, she also serves as Chair of the Leadership Development and Compensation Committee.  Amazon compensated Defendant McGrath at least $ 934,297 in Stock Awards in 2020.  Upon information and belief, Defendant McGrath is a citizen of the State of California.

33.     Defendant Indra K. Nooyi ("Nooyi") has served as a director of the Company since February 2019.  In addition, she also serves as Chair of the Audit Committee.  Amazon compensated Defendant Nooyi at least $901,729 in Stock Awards in 2019.  Upon information and belief, Defendant Nooyi is a citizen of the State of Connecticut.

34.     Defendant Jonathan J. Rubinstein ("Rubinstein") has served as a director of the Company since December 2010.  In addition, he also serves as Lead Director and as a member of the Nominating and Corporate Governance Committee.  Amazon compensated Defendant

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 8

Rubinstein at least $951,489 in Stock Awards in 2019.  Upon information and belief, Defendant Rubinstein is a citizen of the State of California.

35.     Defendant Patricia Q. Stonesifer ("Stonesifer") has served as a director of the Company since February 1997.  In addition, she also serves as a member of the Nominating and Corporate Governance Committee.  Amazon compensated Defendant Stonesifer at least $951,489 in Stock Awards in 2019.  Upon information and belief, Defendant Stonesifer is a citizen of the District of Columbia.

36.     Defendant Wendell P. Weeks ("Weeks") has served as a director of the Company since February 2016.  In addition, he also serves as a member of the Audit Committee.  Amazon compensated Defendant Weeks at least $929,992 in Stock Awards in 2019 and at least $999,026 in Stock Awards in 2021.  Upon information and belief, Defendant Weeks is a citizen of the State of New York.

37.     Defendant Tom A. Alberg ("Alberg") served as a director of the Company from June 1996 until May 2019.  In addition, he also served as a member of the Audit Committee.  Upon information and belief, Defendant Alberg is a citizen of State of Washington.

38.     Defendant Rosalind Brewer ("Brewer") served as a director of the Company from February 2019 until February 16, 2021.  Amazon compensated Defendant Brewer at least $929,992 in Stock Awards in 2019.  Upon information and belief, Defendant Brewer is a citizen of the State of Washington.

39.     Defendant Thomas O. Ryder ("Ryder") served as a director of the Company from November 2002 until December 31, 2021.  In addition, he served as a member of the Leadership Development and Compensation Committee and as Chair of the Audit Committee. Amazon compensated Defendant Ryder at least $951,489 in Stock Awards in 2019.  Upon information and belief, Defendant Ryder is a citizen of the State of Washington.

40.     Collectively, Defendants Bezos, Jassy, Olsavsky, Clark, Reynolds, Selipsky, and Zapolsky are referred to herein as the "Officer Defendants."

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 9

41.     Collectively, Defendants Bezos, Jassy, Alexander, Cooper, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Stonesifer, Weeks, Alberg, Brewer, and Ryder are referred to herein as the "Director Defendants."

42.     Collectively, Defendants Alexander, Nooyi, Weeks, Alberg, and Ryder are referred to herein as the "Audit Committee Defendants."

43.     Collectively, Defendants Gorelick, Rubinstein, and Stonesifer are referred to herein as the "Nominating and Corporate Governance Committee Defendants."

44.     Collectively, Defendants Cooper, Huttenlocher, McGrath, and Ryder are referred to herein as the "Leadership Development and Compensation Committee Defendants."

45.     Collectively Defendants Bezos, Jassy, Olsavsky, Clark, Reynolds, Selipsky, Zapolsky, Alexander, Cooper, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Stonesifer, Weeks, Alberg, Brewer, and Ryder are referred to herein as the "Individual Defendants."

46.     Collectively Defendants Bezos, Jassy, Alexander, Cooper, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Stonesifer, and Weeks are referred to herein as the "Demand Board."

## IV.   DEFENDANTS' MISCONDUCT

### A.     Company Background

47.     Founded in 1994, Amazon is now one of the world's largest, most ubiquitous companies, as well as the world's largest retailer outside of China.  It is the second largest private employer in the United States and provides products and services including online retail, smart home devices, cloud computing, and media streaming—including its own film and television content.

48.     Originally an online book retailer, Amazon quickly expanded into music and videos, and eventually electronics, toys, and other products prior to 2000.  Presently, nearly any physical or digital product imaginable can be purchased on Amazon worldwide.

49.     Further expanding on its retail business, Amazon launched its cloud-computing subsidiary, Amazon Web Services (AWS), in 2002.  AWS provides a range of services to business

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 10

and individuals including web hosting, storage, distributed computing, and analytics. Amazon is now the largest cloud computing service provider in the world.[2] As part of the more than 200 services provided to its customers, AWS regularly receives, processes, and stores personal information of various individuals that provide this information to its customers.

50.     In 2014, Amazon began its foray into being an active presence in its customer's homes with its Alexa virtual assistant. Amazon's Alexa is now found on countless devices in millions of households, including on smartphones, televisions, speakers, as well as in Amazon's own Echo products. As part of its services, Amazon's Alexa recognizes and stores details related to voice patterns and makes and stores recordings of its interactions with users.

51.     Amazon has three big "pillars:" the retail marketplace, Amazon Prime, and Amazon Web Services. Defendant Bezos, as the Company CEO, has described Alexa as the fourth "pillar" of Amazon and emphasized that "Privacy is the one aspect of Alexa that Amazon can't afford to screw up."

**B.     Biometrics and Facial Recognition Technology**

52.     Biometrics is the technical term for measurements used to identify people's unique physical characteristics. Examples of biometric identifiers include an individual's DNA, fingerprints, irises or retinas, voiceprints, and facial geometry. The uniqueness and potential permanence of biometric identifiers present an advantage for businesses to accurately identify and distinguish individuals. Businesses presently use biometrics in a wide variety of applications, including data collection.

53.     One technological application of biometrics is facial recognition software. Facial recognition software uses biometrics to map facial features from a photograph or video. In particular, the software uses an algorithm that calculates a unique digital representation of the face

---

[2] https://www.statista.com/chart/18819/worldwide-market-share-of-leading-cloud-infrastructure-service-providers/.

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

based on the geometric relationship of a person's facial features (such as the distance between their eyes, ears, and nose), creating a face signature or map.  The software then compares the information with a database of known faces to find a match.

54.    Facial recognition technology has been in use for many decades and is one of the most widely used biometrics.  Facial recognition technology uses the layout of facial features and their distance from one another for identification against a "gallery" of faces with similar characteristics. These characteristics can be derived from either a still or video images.  Using statistics, facial recognition algorithms can measure the differences between the face being searched and the enrolled faces in a gallery.  The smaller the difference, the more likely those faces match.

55.    Facial recognition technology is primarily used for three different types of applications: First, facial recognition technology can anonymously characterize faces.  This allows for counting unique faces presented to the sensor over a period of time (sometimes called a "people counter").  Other functions include estimating the age, gender, ethnic origin, and even body mass index of each unique face thus encountered, usually for marketing purposes. Second, facial recognition technology can verify a face against a known image.  For example, this would allow for confirmation that a face presented at a border checkpoint matches the digital face embedded in a document. It also allows for access control, such as at the entrance of a building with a known and restricted population. This function is typically called "verification." Third, facial recognition technology allows for identification of a face against a number of known faces within a database.  For example, this allows for the technology to see if a criminal or terrorist in a surveillance video matches any mug shot photos of people previously arrested or convicted. This function is typically called "identification."[3]

---

[3] https://www.ibia.org/biometrics-and-identity/biometric-technologies/face.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 12

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

56.    Facial recognition technology has improved over the past decade.  Lower costs and increased accuracy have allowed companies such as Amazon to deploy increasingly sophisticated facial recognition software in their applications.  However, this increased sophistication of these applications raises serious privacy concerns.

57.    Biometrics present significant potential privacy threats to the individual if it is compromised, such as a heightened risk for identity theft.  While biometrics have been touted as a way to improve security and potentially limit fraud, the use of biometrics raise grave concerns about potential constant and surreptitious surveillance of individuals by the government and private entities.  Additionally, if a person's biometric data is compromised, the harm could be irreparable because this data would remain compromised.  While other types of theft, such as compromising of bank accounts or credit card numbers, can be mitigated by obtaining new account information, people cannot obtain new biometric data facial bone structure or DNA. Additionally, significant privacy concerns surround the use of biometric data.  These concerns include employers' ability to discover protected health information; ambiguous standards concerning when biometric information can be shared, including with law enforcement; and multimodal big data storage, in which multiple images and various types of biometrics are stored in a database for widespread use.

58.    Due to the growing concern over the use of biometrics and facial recognition technology, state laws in Illinois and Texas prohibit commercial entities from capturing an individual's biometric identifier without his or her consent.  Both states also require businesses to protect biometrics using a reasonable standard of care that is the same as, or more protective than, that used for other confidential or sensitive information.  They also prohibit selling or disclosing a biometric without consent, with certain exceptions, such as for law enforcement purposes.

59.    In addition, at least 19 states restrict using, disclosing or sharing biometric data by either public or private entities, or require security measures, such as encrypting or properly

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

destroying records with biometrics.  And at least 20 states have enacted legislation to protect the personal biometric information of students or minors.

**B.     The Illinois Biometric Information Privacy Act**

60.     In 2008, the Illinois General Assembly enacted the Illinois BIPA to enhance the state's "limited State law regulating the collection, use, safeguarding, and storage of biometrics[.]" 740 Ill. Comp. Stat. §14/5(e).  BIPA defines a "biometric identifier" as including a "scan of hand or face geometry." 740 Ill. Comp. Stat. §14/10.  The legislature noted that "[b]iometrics are unlike other unique identifiers that are used to access finances or other sensitive information," because while social security numbers can be changed if compromised, biometric data are "biologically unique to the individual," and "once compromised, the individual has no recourse, is at heightened risk for identity theft, and is likely to withdraw from biometric-facilitated transactions." 740 Ill. Comp. Stat. §14/5(c).

61.     BIPA defines "biometric information" as:

> a retina or iris scan, fingerprint, voiceprint, or scan of hand or face geometry. Biometric identifiers do not include writing samples, written signatures, photographs, human biological samples used for valid scientific testing or screening, demographic data, tattoo descriptions, or physical descriptions such as height, weight, hair color, or eye color. Biometric identifiers do not include donated organs, tissues, or parts as defined in the Illinois Anatomical Gift Act or blood or serum stored on behalf of recipients or potential recipients of living or cadaveric transplants and obtained or stored by a federally designated organ procurement agency. Biometric identifiers do not include biological materials regulated under the Genetic Information Privacy Act. Biometric identifiers do not include information captured from a patient in a health care setting or information collected, used, or stored for health care treatment, payment, or operations under the federal Health Insurance Portability and Accountability Act of 1996. Biometric identifiers do not include an X-ray, roentgen process, computed tomography, MRI, PET scan, mammography, or other image or film of the human anatomy used to diagnose, prognose, or treat an illness or other medical condition or to further validate scientific testing or screening.

740 ILCS 14/10.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 14

62.     "'Biometric information' means any information, regardless of how it is captured, converted, stored, or shared, based on an individual's biometric identifier used to identify an individual.    Biometric information does not include information derived from items or procedures excluded under the definition of biometric identifiers." 740 ILCS 14/10.

63.     Under BIPA, a company may not collect or otherwise obtain a person or a customer's biometric identifier or biometric information without informing the subject in writing and securing a written release.  Nor may a company profit from an individual's biometric identifiers and information. Moreover, companies must have a public, written policy establishing a retention schedule for biometric identifiers and information and guidelines for their permanent destruction. Specifically, section 14/15(a)-(e) of BIPA provides:

    a)  A private entity in possession of biometric identifiers or biometric information must develop a written policy, made available to the public, establishing a retention schedule and guidelines for permanently destroying biometric identifiers and biometric information when the initial purpose for collecting or obtaining such identifiers or information has been satisfied or within 3 years of the individual's last interaction with the private entity, whichever occurs first. Absent a valid warrant or subpoena issued by a court of competent jurisdiction, a private entity in possession of biometric identifiers or biometric information must comply with its established retention schedule and destruction guidelines.

    b)  No private entity may collect, capture, purchase, receive through trade, or otherwise obtain a person's or a customer's biometric identifier or biometric information, unless it first:

        1) informs the subject or the subject's legally authorized representative in writing that a biometric identifier or biometric information is being collected or stored;

        2) informs the subject or the subject's legally authorized representative in writing of the specific purpose and length of term for which a biometric identifier or biometric information is being collected, stored, and used; and

        3) receives a written release executed by the subject of the biometric identifier or biometric information or the subject's legally authorized representative.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 15

c) No private entity in possession of a biometric identifier or biometric information may sell, lease, trade, or otherwise profit from a person's or a customer's biometric identifier or biometric information.

d) No private entity in possession of a biometric identifier or biometric information may disclose, redisclose, or otherwise disseminate a person's or a customer's biometric identifier or biometric information unless:

(1) the subject of the biometric identifier or biometric information or the subject's legally authorized representative consents to the disclosure or redisclosure; (2) the disclosure or redisclosure completes a financial transaction requested or authorized by the subject of the biometric identifier or the biometric information or the subject's legally authorized representative; (3) the disclosure or redisclosure is required by State or federal law or municipal ordinance; or (4) the disclosure is required pursuant to a valid warrant or subpoena issued by a court of competent jurisdiction.

e) A private entity in possession of a biometric identifier or biometric information shall: (1) store, transmit, and protect from disclosure all biometric identifiers and biometric information using the reasonable standard of care within the private entity's industry; and (2) store, transmit, and protect from disclosure all biometric identifiers and biometric information in a manner that is the same as or more protective than the manner in which the private entity stores, transmits, and protects other confidential and sensitive information.

64.     Notably, section 20 of the BIPA provides for a private right of action.  For negligent violations of the Act, BIPA provides for liquidated damages of $1,000 or actual damages, whichever is greater for each violation; and in the case of intentional or reckless violations, statutory damages in the amounts of $5,000 or actual damages, whichever is greater for each violation.  BIPA also provides for reasonable attorneys' fees and costs, including expert witness fees and other litigation expenses; and BIPA provides for any other relief, including an injunction, as the state or federal court may deem appropriate.

**C.     Other State Laws Likewise Restrict Capture and Use of Biometric Data**

65.     Since 2009, Texas has also had a biometric privacy act that prohibits the capture of an individual's biometric identifiers for a commercial purpose unless the individual is first

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 16

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

informed and has consented to such data collection, the Capture or Use of Biometric Identifier Act ("CUBI").  The law also limits the sale or disclosure of an individual's biometric information except under limited circumstances.  In the law, "biometric identifier" means a retina or iris scan, fingerprint, voiceprint, or recording of hand or face geometry.

66.    A violation of the Texas law is subject to a civil penalty of not more than $25,000 for each violation.  The attorney general may bring an action to recover the civil penalty. Unlike BIPA, there is no statutory private right of action under the CBUI, but government enforcement for violation of the CBUI poses enforcement risks in the millions of dollars.  Therefore, there is substantial civil exposure for noncompliance.

67.    In 2017, the State of Washington became the third state to enact a targeted biometric privacy law, HB 1493.  Since then, the states of Arkansas, California, and New York have expanded cybersecurity data breach notification statutes to include protections for biometric data. The states of Delaware, Michigan, Massachusetts, Arizona, and Alaska currently have legislation pending concerning protecting biometric data.

68.    Underscoring the legal risks and magnitude of exposure, Facebook Inc. ("Facebook") recently reached a $650 million settlement for alleged violations of Illinois' Biometric Information Privacy Act for their use of facial recognition software without permission from affected users.  The Texas Attorney General has sued Facebook for alleged violations of the Texas Business and Commercial Code, which contains provisions governing the collection, retention and disclosure of biometric data.

D.    Amazon's Collection and Use of Biometric Data

69.    Rekognition, which launched in November 2016, is Amazon's core facial recognition product.  Rekognition allows users to match new images of faces with existing, known facial images "based on their visual geometry, including the relationship between the eyes, nose, brow, mouth, and other facial features."  Rekognition is a cornerstone of many of Amazon's largest

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 17

1   consumer products and services, including its photo platform, Amazon Photos, its smart home

2   systems and cameras, and its virtual assistant technology, Alexa.

3        70.     Amazon is also the largest provider of facial recognition technology to law

4   enforcement agencies.  The Company has marketed its Rekognition software to agencies such as

5   the U.S. Immigration and Customs Enforcement and the Federal Bureau of Investigation, to

6   monitor individuals they consider "people of interest."  Amazon has also partnered with more than

7   1,300 law enforcement agencies, allowing them to use footage from their Ring home security

8   cameras in criminal investigations.  Amazon has expanded these efforts marketing their facial

9   recognition software to government agencies despite warnings from consumers, employees,

10  members of Congress, and stockholders.

11       71.     In July 2018, the American Civil Liberties Union of Northern California ("ACLU")

12  published the results of a study it conducted regarding Rekognition's accuracy.  According to the

13  study, Rekognition incorrectly matched twenty-eight members of the U.S. Congress to people who

14  had been arrested for a crime.  The false matches disproportionately involved people of color. That

15  summer, nearly seventy civil rights and research organizations wrote a letter to Bezos demanding

16  that Amazon stop providing facial recognition technology to governments.  In their letter, they

17  called the Company to "stand up for civil rights and civil liberties," stating "Rekognition is a

18  powerful surveillance system readily available to violate rights and target communities of color."

19  Amazon's own employees demanded the Company to stop selling its Rekognition facial

20  recognition software to law enforcement, citing concerns over the "unique threat to civil rights and

21  especially to the immigrants and people of color under attack by [President Donald J. Trump's]

22  administration."

23       72.     To improve the accuracy of its facial recognition products and technologies,

24  Amazon purportedly obtained a data set from IBM, referred to as the "Diversity in Faces Dataset"

25  after IBM made it available to for-profit companies in early 2019.

26

27  VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 18

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

28

73.    To access the Diversity in Faces Dataset, Amazon used the links provided by IBM to download or otherwise obtain from the Flickr Dataset each photograph in order to associate the biometric identifiers and information provided by IBM with the actual photographs to which the biometric data related.  Amazon's collection and use of the Diversity in Faces Dataset allowed it to profit from such data, including data of Illinois residents obtained and used without their consent, by allowing Amazon to improve the effectiveness of its own facial recognition technology and products.

74.    Additionally, Amazon Alexa and Echo devices are designed to record and respond to communications immediately after an individual says a wake word (usually "Alexa" or "Echo"). If the wake word is recognized, Alexa records the ensuing communication and then transmits the recording to Amazon's servers for interpretation and processing before receiving the relevant data in response.  Alexa also records surrounding voices and sounds once activated, including those not spoken by the user conversing with Alexa.  Amazon uses voice recognition technology to surreptitiously collect, use and store voiceprints of its users to identify them, as well as using voice pattern data in conjunction with other customer data for its recognition capabilities.  Such recordings are retained as part of a user's account unless a user actively deletes them.  Alexa capability can be found on more than 100 million devices sold since January 2020.[4]  These include televisions, light bulbs, smart locks, phones, thermostats, appliances, speakers, and vehicles, in addition to Amazon's own line of Echo products.

75.    Finally, as part of Amazon's suite of services offered through Amazon Web Services to its numerous commercial customers, AWS also stores various types of PII, including biometric information, that is collected by those customers.  Such information can include, for example, fingerprints or hand scans of an AWS customer's employees for security and

---

[4] https://www.cnet.com/home/smart-home/amazon-sees-alexa-devices-more-than-double-in-just-one-year/

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 19

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

identification purposes.    Additionally, AWS stores PII of the individual customers of its commercial AWS customers, such as voiceprints used to identify callers to a call center or even the scanned facial geometry of players of video games.

76.    In and around September 2021, Amazon announced a series of new updates, focusing on the biometric capabilities of some of its hardware products, as well as on the company's AWS marketplace. [5] By way of example, at its Enterprise Connect event on Monday September 27, 2021, the retail giant announced three new capabilities for Amazon Connect for contact centers. According to the company's new data, tens of thousands of AWS customers are supporting more than 10 million contact center interactions a day on Amazon Connect. The new platform updates employ voice biometrics via AWS's caller authentication tool Amazon Connect Voice ID.  The biometric solution reportedly provides real-time caller authentication and enables voice access via machine learning by analyzing the caller's speech attributes, like rhythm, pitch, and tone. Another biometric update unveiled by Amazon at its product launch event related to the Echo Show 15, and its face biometrics capabilities. The novel Visual ID biometrics feature enables Alexa devices to show users personalized recommendations, calendars, to-do lists, and more when their faces enter the camera's field of vision.

### E.    Violations of BIPA Have Exposed the Company to Substantial Harm

77.    In direct violation of Illinois' BIPA statute, Amazon stored and continues to store its employees, its users' and its clients' users' biometric information without informing them of these practices and without securing the users' written consent.  Amazon also violates BIPA by failing to develop a written policy, available to the public, establishing a retention schedule and

---

[5]https://www.biometricupdate.com/202109/amazon-unveils-series-of-face-and-voice-biometrics-updates.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 20

guidelines for users to permanently destroy biometric identifiers when the initial purpose for collection was satisfied.

78.     These violations have exposed Amazon to substantial harm resulting to date in at least fourteen separate class action lawsuits for violation of BIPA, a sample of which are set forth below.  In connection with these class action lawsuits, Amazon has already expended significant monetary resources and risks astronomical liability when the actions are concluded.

79.     On June 26, 2019, a state consumer class action lawsuit was filed on behalf of Amazon users in the Circuit Court of Cook County Illinois (the "Wilcosky Class Action").  The Wilcosky Class Action, which includes a subclass for individuals who do not have Alexa accounts ("bystanders") and a subclass for minors, asserted causes of action under section 14/15(b) and (a) of Chapter 740 of the Illinois Compiled Statutes.   Specifically, the plaintiffs asserted that Amazon's Alexa and Echo devices capture, collect and retain voiceprints of any and all people who speak near Alexa devices, regardless of age or affiliation with Amazon.  And in an effort to improve the voice and speech recognition technology, Amazon then retains every voice recording created by the user and any individual who happens to be speaking near the Alexa device. Plaintiffs there assert that Amazon never informed them, by written notice or otherwise, that Amazon collected, stored, and used their biometric identifiers and information, or of the specific purpose and length of term for which their biometric identifiers were being collected, stored, and that Amazon does not publicly provide a retention schedule or guidelines for permanently destroying their biometric data. Plaintiffs seek damages in the amount of $1,000 for negligent and $5,000 for intentional violation of BIPA, *per violation*. Amazon removed the action to federal district court for the Northern District of Illinois on July 26, 2019.

80.     On October 8, 2019, a putative Class Action Complaint was filed alleging that AWS unlawfully obtained and stored class members biometrics information and identifiers in violation of Illinois' Biometric Information Privacy Act ("BIPA"), 740 ILCS 14/1, et seq. (the "Hryniewicki Class Action"). The Hryniewicki Class Action asserted causes of action under section 14/15(a)-

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 21

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

(b) of Chapter 740 of the Illinois Compiled Statutes.  Specifically, the plaintiffs asserted that Amazon offers cloud storage for businesses that handle biometric identifiers and biometric information and that BIPA regulates both the conduct of the entities that capture biometric data and companies that store data and information derived from those biometric identifiers.  AWS failed to implement a publicly available biometric data retention and destruction policy as required by Section 15(a) of BIPA.  They also assert that Amazon never informed them, by written notice or otherwise, of the specific purpose and length of term for which their biometric identifiers were being collected, stored, and used and never obtained written consent for the same, all in violation of Section 15(b) of BIPA.  Plaintiffs seek damages in the amount of $1,000 for negligent and $5,000 for intentional violation of BIPA, *per violation*.  Amazon removed the action to federal district court for the Northern District of Illinois on November 15, 2019.

81.    On November 15, 2019, a state consumer class action lawsuit was filed in the Circuit Court of Cook County, Chancery Division on behalf of plaintiffs whose biometric data is stored by Amazon (the "Ragsdale Class Action").  The Ragsdale Class Action asserted causes of action under section 14/15(a) and (b) of Chapter 740 of the Illinois Compiled Statutes.  Specifically, the plaintiffs asserted that as a leading cloud provider in the United States, Amazon Web Services, Inc. offers cloud storage services for businesses that handle biometric identifiers and biometric information, including employers that collect biometric information on their employees.  Plaintiffs assert that despite possessing plaintiffs' biometric data, AWS failed to implement a publicly available biometric data retention and destruction policy as required by Section 15(a) of BIPA.  They also assert that Amazon never informed them, by written notice or otherwise, of the specific purpose and length of term for which their biometric identifiers were being collected, stored, and used and never obtained written consent for the same, in violation of Section 15(b) of BIPA.  On January 24, 2020, AWS removed the action to the federal District Court for the Northern District of Illinois, expressly pleading for purposes of removal that the

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 22

amount in controversy exceeds the jurisdictional minimum of $5,000,000 and calculating damages as high as $10,000,000.

82.     On October 16, 2020, a federal consumer class action lawsuit was filed against Amazon Web Services Inc. and Pindrop Security Inc. on behalf of Illinois citizens who used Amazon Connect and Pindrop's voice authentication and/or fraud detection technology during the specified class period (the "McGovern Class Action"). The McGovern Class Action asserted causes of action under section 14/15(a)-(e) of Chapter 740 of the Illinois Compiled Statutes. Specifically, the plaintiffs asserted that Amazon collected, captured, obtained, possessed and disseminated the biometric voice identifiers of plaintiffs for profit and without their consent in violation of BIPA. Plaintiffs further assert that Amazon failed to use reasonable standards of care in storing and protecting Plaintiffs' biometric information and biometric identifiers in violation of BIPA.  Plaintiffs seek damages in the amount of $1,000 for negligent and $5,000 for intentional violation of BIPA, *per violation*.

83.     On September 28, 2020, a state employee class action lawsuit was filed on behalf of Amazon employees in the Circuit Court of Cook County, Illinois County Department, Chancery Division (the "Jerinic Class Action").  The Jerinic Class Action asserted causes of action against Amazon.com Inc. and Amazon.com LLC under section 14/15(a), (b) and (d) of Chapter 740 of the Illinois Compiled Statutes. Specifically, the plaintiffs asserted that, as employees, plaintiffs were required to have facial geometry scanned by a facial recognition camera and to have their temperatures taken before entering work and that this information is scanned, tracked, uploaded and stored in violation of BIPA.  Plaintiff employees seek damages in the amount of $1,000 for negligent and $5,000 for intentional violation of BIPA*, per violation*. Amazon removed the action to federal district court for the Northern District of Illinois on October 30, 2020.

84.     On June 11, 2021, Plaintiffs Angela Hogan ("Hogan") and B.H., a minor, brought a putative class action against Amazon.com, Inc. (the "Hogan Class Action") in the Circuit County of Cook Illinois, which action was removed to the U.S. District Court for the Northern District of

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 23

Illinois. A First Amended Complaint was filed in federal court on July 21, 2021. The Hogan Class Action asserted claims  for violation of Section 15 (a)—(c) of the Illinois Biometric Information Privacy Act ("BIPA"), 740 ILL. COMP. STAT. §§ 14/1—14/99 (2008) and for unjust enrichment. Specifically, the plaintiffs asserted that the biometric identifiers—scans of facial geometry—of untold millions of people were obtained, stored, and analyzed by Amazon's Rekognition from the billions of images uploaded to Amazon Photos daily in violation of BIPA. Plaintiffs seek damages in the amount of $1,000 for negligent and $5,000 for intentional violation of BIPA, *per violation*. On March 30, 2022, the court denied Amazon's Motion to Dismiss as to Plaintiff's BIPA claims.

85.    These and numerous additional class action lawsuits known to the Board for many years have placed the Company and the Board on notice of mounting and potential catastrophic harm to the Company and its shareholders.  Notably, BIPA provides that an aggrieved party can obtain damages on a "per violation" –  not a "per person" – basis.  Thus, the potential damages recoverable against Amazon are astronomical to the point that Company could be put out of business if the violations are not immediately addressed, stopped and remedied.

86.    On top of these BIPA class actions, Amazon has faced over 75,000 individual arbitration demands for privacy violations by devices deploying Alexa, forcing Amazon to foot the bill for tens of millions of dollars in case initiation fees due under its own arbitration policy – not to mention Amazon's own attorneys' fees as well as damages and attorneys' fees in any arbitration awards.[6]

87.    The expense and burden of these cases, as well as additional cases, on the Company is substantial.  In addition to direct harms from liability suits, the Individual Defendants' conduct

---

[6] *See* Michael Corkery, *Amazon Ends Use of Arbitration for Customer Disputes*, N.Y. TIMES, (July 22, 2021), https://www.nytimes.com/2021/07/22/business/amazon-arbitration-customer-disputes.html (reporting that each arbitration demand cost Amazon about $2,900 at the outset – which would equal $217 million for 75,000 arbitration demands).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 24

also jeopardizes and harms one of Amazon's most important (and fragile) assets: consumer trust. Reputational damage is particularly devastating for technology companies like Amazon.

**F.     Defendants Made or Allowed Improper Public Statements**

88.     Amazon has in place a Code of Business Conduct and Ethics.  The very first principle it espouses states, "Employees must follow applicable laws, rules and regulations at all times. Employees with questions about the applicability or interpretation of any law, rule or regulation, should contact the Legal Department."

89.     Amazon's Code of Business Conduct and Ethics also applies equally to its directors, stating "With respect to their service on behalf of the Company, Amazon.com's Board of Directors must comply with the relevant provisions of this Code of Conduct, including conflicts of interest, insider trading and compliance with all applicable laws, rules and regulations."

90.     Defendants have known for years of the significant risks to the Company related to laws regarding privacy and disclosed such risks to investors.

91.     At least as early as 2019, Defendants knew that Amazon was actively engaged in activities that were potentially illegal in nature.  For example, in its 2019 10-K, Amazon disclosed that it was using facial recognition software in its Rekognition database.  The Company disclosed that it knew that there were ambiguities or uncertainties in how existing laws should apply to facial recognition technology.  2019 10-K at p. 12.[7]  While Amazon's official position appears to cloud the possible illegality of its actions, multiple shareholders expressly commented in April and May of 2019 that these actions violated BIPA and potentially violated customers' and human rights.[8]

---

[7] This 10-K was signed on January 31, 2019 by Defendants Bezos, Olsavsky, Reynolds Alberg, Gorelick, Huttenlocher, McGrath, Rubinstein, Ryder, Stonesifer, and Weeks.

[8] *See* Rule 14a-103 Notice of Exempt Solicitation, Shareholder Rebuttal to Amazon.com, Inc., at p. 7 (Form PX14A6G) (May 1, 2019); *see also* Rule 14a-103 Notice of Exempt Solicitation, Shareholder Rebuttal to Amazon.com, Inc., at p. 6 (Form PX14A6G) (April 25, 2019).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 25

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

1    Specifically, shareholders promoting a proposal observed there is insufficient board oversight

2    related to Rekognition:

3        [We] are concerned that the Amazon board is not equipped to adequately identify
         and assess the risks posed by Rekognition.  The directors overall lack expertise that
4        would give them the background or tools to assess the human rights impacts of
         machine learning, artificial intelligence, and the primary technologies behind a
5        product like Rekognition.  One possible exception is director Daniel Huttenlocher,
6        who holds a Ph.D in Computer Science from MIT and hails an interest in "emerging
         technologies."   The board also lacks any governance committee tasked with
7        overseeing these risks. This is another reason why sales should be stopped until an
8        independent group of experts has the ability to assess the risks and advise the board
         on whether or how it could proceed with sales of Rekognition to governments.[9]
9

10       92.    Additionally, according to shareholders, Directors ignored shareholder concerns

11   about the sale of biometrics and facial recognition software to law enforcement:

12        On June 15th, 2018, the lead proponent of this resolution was also the lead
13       signatory on an initial letter by 19 financial services firms holding Amazon stock,
         including wealth management companies and registered investment advisors,
14       raising strong objections to the introduction of the Company's facial recognition
         technology. Not only did Amazon not reply to the initial communication, there was
15       no acknowledgment of receipt of the communication. Such initial issues raised
16       specifically included "substantial risks for our Company negatively impacting our
         Company's stock valuation and increasing financial risk for shareholders." The
17       June 15th, 2018 letter also stated: "...we have seen no evidence of our Board of
18       Directors conducting fiduciary oversight on how Rekognition may or may not,
         should or should not, be deployed. The recent experience and scrutiny of Facebook
19       demonstrated the degree to which these new issues may undermine company value
20       as the detrimental impacts on society become clear. While Rekognition may be
         intended to enhance some law enforcement activity, we are deeply concerned it
21       may ultimately violate civil and human rights."[10]
22

23   _____
     [9] See Rule 14a-103 Notice of Exempt Solicitation, Shareholder Rebuttal to Amazon.com, Inc., at
24   p. 9 (Form PX14A6G) (May 1, 2019); see also Rule 14a-103 Notice of Exempt Solicitation,
     Shareholder Rebuttal to Amazon.com, Inc., at p. 9 (Form PX14A6G) (April 25, 2019).
25   [10] Rule 14a-103 Notice of Exempt Solicitation, Shareholder Rebuttal to Amazon.com, Inc., at p.
     4 (Form PX14A6G) (May 1, 2019) (emphasis supplied).
26

27   VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 26          HERMAN JONES LLP
                                                            15113 Washington Ave. NE
28                                                          Bainbridge Island, WA 98110
                                                               206.819.0821

93.     Again, in Amazon's 2022 Proxy Statement, the current Board dismissed continued shareholder concerns about risks the Company faces from its violations of consumer privacy.  The Board responded to shareholder concerns by attempting to reassure shareholders that: "Our Board has reviewed Amazon Rekognition, along with other programs, as part of numerous AWS business reviews."[11]

94.     The Board disregarded the shareholder concerns that Amazon is exposed to financial, reputational, regulatory, legal, and human capital management risk due to its sales of Rekognition.

95.     The SEC added that "a number of other [Amazon] products – Alexa, Ring, and [Wi-Fi systems called] Eero – will face a spillover effect if Amazon's status as a trusted company is breached…"[12]

96.     In Amazon's 2020 10-K, the Company again expressly discloses its knowledge of laws and regulations covering "privacy, data protection, data security, network security, consumer protection" as well as a number of others.  Amazon.com, Inc. Annual Report (Form 10-K), at pp. 13, 59 (February 3, 2021).   These laws include biometric information regulation.   Similar disclosures are in Amazon's 2021 10-K.  *See* Amazon.com, Inc. Annual Report (Form 10-K), at pp. 13-14, 59 (February 4, 2022).

97.     The Company's annual reports fail to properly report on and obscure the magnitude of the Company's exposure in the BIPA Class Actions and mislead investors as to the astronomical financial, operational, legal, regulatory and enforcement risks of violating BIPA and of the actions already pending against the Company.

---

[11] Amazon.com, Inc., 2022 Proxy Statement (Schedule 14A), p. 86 (April 14, 2022).
[12] *See* Amazon.com, Inc., SEC Division of Corporation Finance Letter, https://www.sec.gov/divisions/corpfin/cf-noaction/14a-8/2019/johnharringtonetal032819-14a8.pdf, at p. 6 (March 28, 2019).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 27

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

98.     Despite detailing numerous other specific legal matters, including specific cases involving patents, labor issues and Fair Credit Reporting (and the financial and operational risks attendant to those matters), Amazon's 10Ks for 2019, 2020, and 2021 universally fail to apprise shareholders of the BIPA class actions, the mounting *per violation* statutory fines and the potentially devasting effects to the Company posed by violation of BIPA and these pending class actions.

99.     Moreover, the Board's responses to shareholder concerns reveals a lack of safeguards, a failure to oversee legal compliance issues, conscious disregard of the law, and a conscious choice to turn a blind eye to Amazon's conduct and the Board's oversight responsibilities. When dismissing various shareholder concerns about facial recognition software, the Board stated: "In internal accuracy tests of Amazon Rekognition's facial recognition features, [Amazon Web Services] evaluated photos from a publicly available dataset of 1 million face images and found zero false positive matches at a 99% confidence level…"[13]   The Board carelessly referenced this testing and use of "1 million face images" to promote and excuse its actions. Rather than vindicate the actions of the Company and provide value to the Company, that conduct led to a class action lawsuit for violations of BIPA and exposed the Company to significant liability. The aforementioned "publicly available dataset" with the biometric data of 1 million people contained the biometric data of Illinois residents without their consent. In 2020, Illinois residents brought a class action against Amazon for precisely the misconduct the Board reviewed and celebrated. *See Stephen Vance et al. v. Amazon.com, Inc.*, No. 2:20-cv-01084 (W.D. Wash. July 14, 2020).   These statements were approved by the Board at the time, which included Defendants Bezos, Alberg, Brewer, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Ryder, Stonesifer, and Weeks.

---

[13] *See* Schedule 14A - Proxy Statement Pursuant to Section 14(a) of the Securities Exchange Act of 1934, filed on April 11, 2019, at pp. 20, 23.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 28

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

100.    The Company unsuccessfully attempted to suppress and omit from its 2019 Proxy Statement the shareholder concerns raised in two shareholder proposals referenced above.  The SEC found Amazon's "facial recognition software is a high visibility offering of an estimated $23 billion revenue segment of the Company, Amazon Web Services."[14]  Amazon Web Services has since grown even more lucrative for the Company, with the Company reporting the segment had $62 billion in revenue and $18 billion in operating income in 2021.

101.    As with Amazon's 2019 Proxy Statement, the Board's statements in the 2020 Proxy Statement dismiss shareholder concerns about the risks and privacy implications of Amazon's facial recognition software.  These statements were approved by the Board at the time, which included Defendants Bezos, Brewer, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Ryder, Stonesifer, and Weeks.

102.    Despite Defendants' plain understanding that the Company's actions violated BIPA and were illegal, the Defendants permitted the Company to make false statements about their compliance. Moreover, no action was taken to prevent the Company from violating BIPA and similar statute statutes in other states and improperly exposing the Company to the significant legal exposure it now faces.  Additionally, Defendants' actions also violate Amazon's corporate policy as set forth in Paragraphs 88-89 above.

## V.    DEFENDANTS' DUTIES

### A.    Defendants' Fiduciary Duties

103.    By reason of their positions as officers and/or directors of Amazon and because of their responsibility to control the business and corporate affairs of the Company, the Individual Defendants owed, and owe, the Company and its stockholders the fiduciary obligations of good

---

[14]    *See* Amazon.com, Inc., SEC Division of Corporation Finance Letter, https://www.sec.gov/divisions/corpfin/cf-noaction/14a-8/2019/johnharringtonetal032819-14a8.pdf, at p. 6 (March 28, 2019).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 29

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

faith, loyalty, due care, and candor and were, and are, required to use their utmost ability to control and manage the Company in a just, honest, fair, and equitable manner.  Each Individual Defendant owed, and owes, the Company and its stockholders the fiduciary duty to exercise good faith and diligence in the administration of the affairs of the Company, as well as the highest obligations of fair dealing and not to act in furtherance of his or her personal interest or benefit.

104.    Because of their positions of control and authority as officers and/or directors of Amazon, Defendants were able to, and did, directly and/or indirectly, exercise control over the wrongful and illegal acts complained of herein.  Because of their advisory, executive, managerial, and directorial positions with Amazon, each Defendant had knowledge of material, nonpublic information regarding the Company.  In addition, as officers and/or directors of a publicly held company, Defendants had a duty to promptly disseminate accurate and truthful information with regard to the Company's business, operations, and prospects including accurate information concerning financial, operational, legal regulatory and enforcement risks, so that the market price of the Company's stock would be based on truthful and accurate information.

105.    At all times relevant hereto, each Defendant was the agent of each of the other Defendants and of Amazon and was at all relevant times acting within the course and scope of such agency.

106.    To discharge their duties, Defendants were, and are, required to exercise reasonable and prudent oversight and supervision over the management, policies, practices, and controls of Amazon.  By virtue of such duties, Defendants were, and are, required to, among other things:

(a)    Exercise good faith to ensure that the Company is operated in a diligent, efficient, honest, and prudent manner and in accordance with all applicable laws (including federal and state laws, government rules and regulations, and the Company's certificate of incorporation and bylaws);

(b)    Neither violate nor knowingly permit any officer, director, or employee of Amazon to violate any applicable laws, rules, or regulations;

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 30

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

(c)     Remain informed as to the status of Amazon's operations, and upon receipt or notice of information of illegal, imprudent or unsound practices, to make a reasonable inquiry in connection thereto and to take steps to correct such conditions or practices;

(d)     Establish and maintain systematic and accurate records and reports of the business and affairs of Amazon and procedures for the reporting of the Company's business and affairs to the Board and to periodically investigate, or cause independent investigation to be made of, said reports and records;

(e)     Maintain and implement an adequate, functioning system of internal controls, such that the affairs and operations of Amazon are conducted in accordance with all applicable laws, rules, and regulations; and

(f)     Truthfully and accurately inform and guide investors and analysts with respect to the business operations of the Company.

**B.     Additional Duties of the Audit Committee Defendants**

107.     In addition to the duties discussed above with respect to all of the Individual Defendants, the Audit Committee Defendants owed specific duties to Amazon under the Audit Committee Charter ("Audit Charter").  Among other things, the Audit Charter charges the Audit Committee Defendants with the following authority and responsibilities, among others:

(a)     The Committee reviews and discusses with management and the independent auditors the annual audited and quarterly unaudited financial statements and related disclosures included in the Company's quarterly earnings releases and in the Company's periodic reports on Form 10-K and 10-Q.

(b)     The Committee discusses with management, the senior internal audit executive and the independent auditors the adequacy and effectiveness of the Company's disclosure controls and procedures, the adequacy and effectiveness of the Company's internal control over financial reporting, and the Company's risk assessment and risk management policies, including data privacy and security, business continuity, and operational risks.

(c)     The Committee oversees legal and regulatory matters that may have a material impact on the Company's financial statements and the Company's

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 31

Code of Business Conduct and Ethics (other than with respect to workplace discrimination and harassment). The Committee periodically reviews the Company's compliance policies and procedures, and receives and reviews certain reports on complaints, allegations, and incidents reported pursuant to the Code of Business Conduct and Ethics or through the Company's other hotlines and procedures.

**C.  Additional Duties of the Nominating and Corporate Governance Committee Defendants**

108.  In addition to the duties discussed above with respect to all of the Individual Defendants, the Nominating and Corporate Governance Committee Defendants owed specific duties to Amazon under the Nominating and Corporate Governance Committee Charter ("NCGC Charter").  Among other things, the NCGC Charter charges the Nominating and Corporate Governance Committee Defendants with the following authority and responsibilities, among others:

(a)  The Committee oversees and monitors the Company's policies and initiatives relating to corporate social responsibility, including human rights and ethical business practices, and risks related to the Company's operations and engagement with customers, suppliers, and communities, other than with respect to human capital management matters, which are overseen by the Leadership Development and Compensation Committee, and compliance and controls matters, which are overseen by the Audit Committee.

(b)  The Committee oversees the Company's corporate governance initiatives and periodically considers, and reports to the Board on, corporate governance policies. In connection with this responsibility, the Committee develops and periodically reviews the Corporate Governance Guidelines and recommends changes to the Board.

109.  "Under its charter, the Nominating and Corporate Governance Committee, which is comprised of directors with experience in emerging technologies and public policy, is given responsibility for overseeing and monitoring the Company's policies and initiatives relating to corporate social responsibility, including human rights and ethical business practices, and risks

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 32

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

related to the Company's operations and engagement with customers, suppliers, and communities."[15]

110.    The Nominating and Corporate Governance Committee Defendants have allegedly provided oversight on behalf of the Board on aspects of Rekognition, including its facial recognition capabilities.  "These reviews focus on the actual operation and use of Amazon Rekognition, the potential concerns and abuses that critics have suggested could arise from the technology, and our actions to resolve or mitigate those risks and concerns."[16]

### D.    Additional Duties of the Leadership Development and Compensation Committee Defendants

111.    In addition to the duties discussed above with respect to all of the Individual Defendants, the Leadership Development and Compensation Committee Defendants owed specific duties to Amazon under the Leadership Development and Compensation Committee Charter ("LDCC Charter").  Among other things, the LDCC Charter charges the Leadership Development and Compensation Committee Defendants with the following authority and responsibilities, among others:

(a)    Overseeing and monitoring the Company's strategies and policies related to human capital management within the Company's workforce, including with respect to policies on diversity and inclusion, workplace environment and safety, and corporate culture.

(b)    The Committee establishes and reviews the compensation of the Company's Chief Executive Officer ("CEO") and all other executive officers, including establishing terms of employment for new executive officers; periodically reviewing and approving compensation for existing executive officers; reviewing and approving any compensation-related performance goals, including evaluating the satisfaction of such goals; and approving the terms associated with any executive officer's termination of employment….

---

[15] Amazon.com, Inc., 2022 Proxy Statement (Schedule 14A), p. 86 (April 14, 2022).
[16] *Id.*

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 33

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

## VI. DAMAGES TO AMAZON

112. As a direct and proximate result of Defendants' misconduct, actions and failure to act, Amazon has suffered and continues to suffer significant harm, including, but not limited to:

(a) Legal and other costs incurred, and the distraction of, investigating and defending Amazon—including its subsidiaries such as AWS—in the BIPA Class Actions, as well as potentially hundreds of millions of dollars in damages in connection with any settlement of or judgment in the BIPA Class Actions or any related litigation;

(b) Legal and other costs incurred due to an increase in regulatory scrutiny of Amazon's future products and services;

(c) Costs incurred related to any corrective measures or changes to Amazon's products or services in order to comply with BIPA and/or similar additional laws or regulations;

(d) The irreparable harm to the Company's reputation, loss of credibility, and loss of goodwill associated with the Company's continued privacy law violations (including violations of BIPA) and its failure to properly disclose the associated risks in its public statements concerning its business, operations, and prospects;

(e) Costs incurred from compensation and benefits paid to Defendants and other members of Amazon's management while they were engaged in the improper conduct alleged herein; and,

(f) Mounting risk of catastrophic statutory damages on a *per violation* basis, with millions of violations occurring daily each and every time biometric data is captured and stored on Amazon devices, third party data is stored in Amazon cloud-based services, and data is captured concerning Amazon employees.

## VII. CONSPIRACY, AIDING AND ABETTING, AND CONCERTED ACTION

113. In committing the wrongful acts alleged herein, Defendants have pursued, or joined in the pursuit of, a common course of conduct and have acted in concert with and conspired with one another in furtherance of their common plan or design. In addition to the wrongful conduct

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 34

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

alleged herein giving rise to primary liability, Defendants further aided and abetted and/or assisted each other in breaching their respective duties.

114.    During all times relevant hereto, Defendants, collectively and individually, initiated a course of conduct that was designed to and did, among other things: (i) deceive the investing public including stockholders of Amazon; and (ii) permit flawed and ineffectual internal controls over the Company's operations.  In furtherance of this plan, conspiracy, and course of conduct, Defendants, collectively and individually, took the actions set forth herein.

115.    Defendants engaged in a conspiracy, common enterprise, and/or common course of conduct.  During this time, Defendants caused and/or allowed the improper conduct described herein.

116.    The purpose and effect of Defendants' conspiracy, common enterprise, and/or common course of conduct was, among other things, to disguise Defendants' violations of state and federal law, breaches of fiduciary duty, waste of corporate assets, unjust enrichment, and to conceal adverse information concerning the Company's business, operations, and future prospects.

117.    Defendants accomplished their conspiracy, common enterprise, and/or common course of conduct by causing the Company to purposefully or recklessly engage in the improper conduct described herein.  Because Defendants' actions occurred under the authority of the Board, each Defendant was a direct, necessary, and substantial participant in the conspiracy, common enterprise, and/or common course of conduct complained of herein.

118.    Each Defendant aided and abetted and rendered substantial assistance in the wrongs complained of herein.  In taking such actions to substantially assist the commission of the wrongdoing complained of herein, each Defendant acted with knowledge of the primary wrongdoing, substantially assisted in the accomplishment of that wrongdoing, and was aware of his or her overall contribution to and furtherance of the wrongdoing.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 35

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

## VIII.   DERIVATIVE ALLEGATIONS

119.    Plaintiff brings this action derivatively in the right and for the benefit of the Company to redress injuries suffered, and to be suffered, by Amazon as a direct result of the breaches of fiduciary duty, waste of corporate assets, and unjust enrichment by the Individual Defendants.

120.    Amazon is named as the nominal defendant in this case solely in a derivative capacity.  This is not a collusive action to confer jurisdiction on this Court that it would not otherwise have.

121.    Plaintiff will adequately and fairly represent the interests of the Company and its stockholders in prosecuting this action.

122.    Due to the Board's direct involvement in the wrongdoing, its members' lack of independence, and the substantial likelihood of liability its members face, prosecution of this action independent of the Board is in the best interests of the Company and its stockholders.

## IX.   FUTILITY ALLEGATIONS

123.    Plaintiff incorporates by reference all prior paragraphs as if fully set forth herein.

124.    Amazon's current Board, the "Demand Board," consists of eleven members, Bezos, Jassy, Alexander, Cooper, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Stonesifer, and Weeks.  Plaintiff has not made any demand on the Board to institute this action because such a demand would be a futile and useless act.

### A.    Demand Is Excused as to Defendants Bezos and Jassy Because They Lack Independence

125.    Both Defendants Bezos and Jassy fall under the NASDAQ's definition of directors who are not independent.  According to the NASDAQ's rules regarding listing, a director is not independent if he or she is, or has been within the last three years, an employee or an executive officer of the listed company.  Because Defendant Jassy is Amazon's current President and CEO, he may not be considered independent.  Likewise, Defendant Bezos may not be considered

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 36

1   independent as he served as its CEO from Amazon's founding up until July 2021.  The Company's

2   2022 Proxy Statement does not indicate that Defendants Bezos and Jassy are "independent" as

3   defined by the NASDAQ rules.

4          126.    Furthermore, Defendant Jassy is not independent because his principal professional

5   occupation is his employment with Amazon.

6          127.    As President and CEO of Amazon beginning in July 2021 and previously CEO of

7   AWS since April 2016, Defendant Jassy received significant compensation from the Company as

8   described herein.  Accordingly, Defendant Jassy lacks independence from the other members of

9   the Board due to his interest in maintaining his executive positions.

10         128.    This lack of independence renders Defendants Bezos and Jassy incapable of

11  impartially considering a demand to commence and vigorously prosecute this action.

12  **B.      Demand Is Excused Because the Director Defendants Face a
          Substantial Likelihood of Liability for Their Misconduct**

13

14         129.    Each of the Director Defendants breached their fiduciary duties by, among other

    things:

15

16         (a)     Failing to ensure the Company's compliance with relevant legal and

17  regulatory requirements, including, but not limited to, requirements imposed under BIPA;

18         (b)     Failing to heed and take action upon red flags indicating violations of BIPA

19  across the Company and that the Company's internal controls to ensure compliance with BIPA

20  were inadequate;

21         (c)     Failing to maintain an adequate system of oversight, accounting controls

22  and procedures, disclosure controls, and other internal controls, which were necessary to prevent

    or promptly correct the improper statements made on the Company's behalf;

23

24         (d)     Themselves affirmatively making, allowing to be made, and/or failing to

    correct improper statements in SEC filings relating to the Company's operations, internal controls,

25

26  VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 37          HERMAN JONES LLP
                                                          15113 Washington Ave. NE
27                                                        Bainbridge Island, WA 98110
                                                          206.819.0821
28

legal proceedings and risks (including financial, operational, legal, regulatory and enforcement, risks), and privacy compliance.

(e)     Awarding Amazon's senior executives lavish compensation packages, despite their knowledge of and responsibility for the Company's willful misconduct.

130.   Amazon's violations of BIPA are longstanding, have been raised before the Demand Board, and have been repeatedly disregarded by the Demand Board.  In Amazon's 2019 and 2020 proxy statements, the Board even dismissed shareholder concerns specifically raising the illegality and privacy implications of Amazon's facial recognition system, Rekognition.  A majority of the current members of the Demand Board – namely, Defendants Bezos, Gorelick, Huttenlocher, McGrath, Nooyi, Rubinstein, Stonesifer, and Weeks – were among the directors who dismissed shareholder concerns about BIPA and privacy violations.

131.   In Amazon's 2022 Proxy Statement, the current Demand Board dismissed the risks posed to the Company by Amazon's flouting of consumer privacy rights under the law and responded to shareholder concerns by attempting to reassure shareholders that: "Our Board has reviewed Amazon Rekognition, along with other programs, as part of numerous AWS business reviews."[17]

132.   Accordingly, the Director Defendants face a substantial likelihood of liability for their breach of fiduciary duties, making any demand upon them futile.

133.   Additionally, the Audit Committee Defendants at all relevant times, had specifically defined duties to properly oversee: (i) the integrity of the Company's publicly reported financial statements, press releases, and guidance; (ii) its system of internal, financial, and administrative controls; and (iii) the Company's compliance with legal and regulatory requirements, including risk management policies and consumer privacy violation risks.  Thus, the

---

[17] Amazon.com, Inc., 2022 Proxy Statement (Schedule 14A), p. 86 (April 14, 2022).

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 38

Audit Committee Defendants were responsible for knowingly or recklessly allowing and failing to correct the improper conduct detailed herein.

134.     For these reasons, the Audit Committee Defendants face a substantial likelihood of liability for their breach of fiduciary duties, making any demand upon them futile.

135.     Additionally, the Nominating and Corporate Governance Defendants – who have "experience in emerging technologies and public policy" – at all relevant times specifically reviewed risks of Amazon's Rekognition facial recognition technology in operation and actions to resolve or mitigate those risks, as part of their duty to oversee the Company's ethical business practices.  Thus, the Nominating and Corporate Governance Defendants were responsible for knowingly or recklessly allowing and failing to correct the improper conduct detailed herein.

136.     For these reasons, the Nominating and Corporate Governance Defendants face a substantial likelihood of liability for their breach of fiduciary duties, making any demand upon them futile.

137.     The Demand Board is aware that the use of biometrics and facial recognition technology in Amazon's products and services has been extremely profitable for the Company. The Demand Board is also aware and has been alerted that this conduct violates BIPA. Fiduciaries of a Delaware Corporation cannot be loyal to a Delaware corporation by knowingly causing it to seek profit by violating the law.  Each of the Directors face substantial likelihood of personal liability for breaching their duty of loyalty, among many other duties.

138.     In the face of the knowing and continuing violation of the BIPA statute, each of the Directors has failed to act, both to remedy illegal conduct and to apprise shareholders of the risks attendant to Amazon's conduct, demonstrating a conscious disregard for their responsibilities and failing to discharge their fiduciary duty of loyalty in good faith.

139.     Demand is futile as to each of the members of the Demand Board.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 39

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

**C.     Demand Is Excused for Additional Reasons**

140.     Demand is futile because the Board is dominated and controlled by Defendant Bezos because of his immense influence as founder of the company and long tenure as CEO. Defendant Bezos built Amazon into one of the largest and most profitable companies in the world and has about a 13% stake in the Company.

141.     The Director Defendants are likewise conflicted and unable to pursue the Company's claims against the Officer Defendants.  Any effort to directly prosecute such claims against the Officer Defendants for their direct roles in the violations of applicable law carried out in Amazon's name would necessarily expose the Board's own culpability for the very same conduct.  In other words, given that the Board was required to be regularly informed concerning the Company's public reporting, outlook, controls, and employment decisions with respect to the Company's most senior officers, any effort by the Board to hold the Officer Defendants liable would lead the Officer Defendants to defend on the ground that their own conduct was consistent with corporate policy and practice, as established by and known to the Board.

142.     Moreover, the acts complained of constitute violations of the fiduciary duties owed by Amazon's officers and directors, and these acts are incapable of ratification.  Despite having knowledge of the claims and causes of action raised by Plaintiff, the Board has failed and refused to seek to recover on behalf of the Company for any of the wrongdoing alleged by Plaintiff herein.

**FIRST CAUSE OF ACTION**

**Breach of Fiduciary Duties**
**(Against the Officer Defendants)**

143.     Plaintiff incorporates by reference and realleges each and every allegation contained above, as though fully set forth herein.

144.     The Officer Defendants owed fiduciary duties to Amazon and its stockholders.  By reason of their positions as fiduciaries to the Company, the Officer Defendants owed duties of

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 40

good faith, loyalty, candor, and truthful disclosure.  In addition, the Officer Defendants have specific fiduciary duties as defined by the Company's corporate governance documents, including its Code of Business Conduct and Ethics, and principles that, had they been discharged in accordance with the Officer Defendants' obligations, would have prevented the misconduct and the consequent harm to the Company.

145.    The Officer Defendants violated these duties by issuing, causing to be issued, or otherwise allowing the material omissions and misrepresentations described herein.  The Officer Defendants were well aware of the relevant privacy laws, rules, and regulations.

146.    The Officer Defendants consciously breached their fiduciary duties and violated their corporate responsibilities in at least the following ways:

(a)    Failing to ensure the Company's compliance with relevant legal and regulatory requirements, including but not limited to requirements imposed by privacy and information security laws such as the Illinois Biometric Information Privacy Act;

(b)    Engaging in a course of action with respect to individuals' biometric information which lead to violations of the law and regulations;

(c)    Themselves affirmatively making, allowing to be made, and/or failing to correct improper statements in SEC filings relating to the Company's operations, internal controls, legal proceedings and risks, and privacy compliance; and,

(d)    Failing to implement and maintain adequate internal controls to ensure that adequate management and disclosure of risks associated with privacy violations.

147.    As a direct and proximate result of the Officer Defendants' breaches of their fiduciary obligations, Amazon has sustained significant damages.  Accordingly, the Officer Defendants are liable to the Company.

148.    Plaintiff, on behalf of Amazon, has no adequate remedy at law.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 41

**SECOND CAUSE OF ACTION**

**Breach of Fiduciary Duties**
**(Against the Director Defendants)**

149.    Plaintiff incorporates by reference and realleges Paragraphs 1 through 142 above.

150.    The Director Defendants owed and owe Amazon fiduciary obligations.  By reason of their fiduciary relationships, the Director Defendants specifically owed and owe Amazon the highest obligation of good faith, fair dealing, loyalty, and due care in the administration of the affairs of the Company, including, without limitation, the oversight of the Company's compliance with state and federal privacy laws, rules, and regulations, as well as the duty of candor and truthful disclosure with respect to their public statements.

151.    The Director Defendants also owed and owe Amazon fiduciary duties under state corporation law, which impose broad obligations on Defendants vis-a-vis the corporation and its individual stockholders.

152.    In addition, the Director Defendants have specific fiduciary duties as defined by the Company's corporate governance documents, including its Guidelines on Significant Corporate Governance Issues, Code of Business Conduct and Ethics, and the charters of various Board committees, and principles that, had they been discharged in accordance with the Director Defendants' obligations, would have prevented the misconduct and the consequent harm to the Company.

153.    Each Director Defendant violated his or her fiduciary duties by consciously causing, or consciously failing to prevent the Company from engaging in, the improper acts complained of herein.

154.    The Director Defendants consciously breached their fiduciary duties and violated their corporate responsibilities in at least the following ways:

(a)    Failing to ensure the Company's compliance with relevant legal and regulatory requirements, including, but not limited to, requirements imposed under BIPA;

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 42

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

(b)     Failing to heed and take action upon red flags indicating violations of BIPA across the Company and that the Company's internal controls to ensure compliance with BIPA were inadequate;

(c)     Failing to maintain an adequate system of oversight, accounting controls and procedures, disclosure controls, and other internal controls, which were necessary to prevent or promptly correct the improper statements made on the Company's behalf;

(d)     Themselves affirmatively making, allowing to be made, and/or failing to correct improper statements in SEC filings relating to the Company's operations, internal controls, legal proceedings and risks (including financial, operational, legal, regulatory and enforcement, risks), and privacy compliance.

(e)     Awarding Amazon's senior executives lavish compensation packages, despite their knowledge of and responsibility for the Company's willful misconduct.

(f)     Reappointing the same directors who had failed in their duties to the Audit Committee and Nominating and Corporate Governance Committee.

155.     As a direct and proximate result of the Director Defendants' breaches of their fiduciary obligations, Amazon has sustained significant damages.   Accordingly, the Director Defendants are liable to the Company.

156.     Plaintiff, on behalf of Amazon, has no adequate remedy at law.

### THIRD CAUSE OF ACTION

### Waste of Corporate Assets
### (Against the Individual Defendants)

157.     Plaintiff incorporates by reference and realleges Paragraphs 1 through 142 above.

158.     As a result of the misconduct described above, Defendants have wasted corporate assets by forcing the Company to expend valuable resources in defending itself in the ongoing litigation, in addition to any ensuing costs from a potential settlement or adverse judgment.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 43

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

159.   Further, as a result of the failure to allow the Company to implement adequate internal and financial controls, the Individual Defendants have caused Amazon to waste its assets by paying improper compensation and bonuses to certain of its executive officers and directors that breached their fiduciary duties.

160.   As a result of their waste of corporate assets, Defendants are liable to the Company.

161.   Plaintiff, on behalf of Amazon, has no adequate remedy at law.

**FOURTH CAUSE OF ACTION**

**Unjust Enrichment**
**(Against the Individual Defendants)**

162.   Plaintiff incorporates by reference and realleges Paragraphs 1 through 142 above.

163.   By their wrongful acts and omissions, the Individual Defendants were unjustly enriched at the expense of and to the detriment of Amazon.  Defendants were unjustly enriched because of the compensation and remuneration they received while breaching fiduciary duties owed to the Company.

164.   Plaintiff, as a stockholder and representative of Amazon, seeks restitution from Defendants, and each of them, and seeks an order of this Court disgorging all profits, benefits, severance payments, and other compensation obtained by Defendants, and each of them, in connection with, from or at the time of their wrongful conduct and fiduciary breaches.

165.   Plaintiff, on behalf of Amazon, has no adequate remedy at law.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment as follows:

A.   Finding that a stockholder demand on the Amazon Demand Board would have been a futile and useless act;

B.   Finding that Defendants have breached their fiduciary duties to the Company, wasted corporate assets, and were unjustly enriched;

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 44

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

C.      Against each Defendant in favor of Amazon for the amount of damages sustained by Amazon, jointly and severally, in an amount to be determined at trial, together with pre- and post-judgment interest at the maximum legal rate allowable by law;

D.      Requiring Defendants to return to Amazon all compensation and remuneration of whatever kind paid to them by the Company during the time that they were in breach of their fiduciary duties;

E.      Directing Amazon to take all necessary actions to reform and improve its corporate governance and internal procedures to comply with applicable laws and to protect Amazon and its stockholders from a repeat of the damaging events described herein, including, but not limited to, putting forward for stockholder vote, resolutions for amendments to the Company's Bylaws or Articles of Incorporation and taking such other action as may be necessary to place before stockholders for a vote of the following corporate governance policies:

1.      a proposal to strengthen the Company's controls and monitoring of compliance with privacy laws, including BIPA;

2.      a proposal to strengthen the Company's controls over accounting and financial reporting;

3.      a proposal to strengthen the Board's supervision of operations (including research & development along with third-party contracts) and develop and implement procedures for greater stockholder input into the policies and guidelines of the Board;

4.      a proposal to strengthen Amazon's disclosure controls to ensure material information is adequately and timely disclosed to the SEC and the public;

5.      a provision to control insider selling and conflicts of interest;

6.      a provision to permit the stockholders of Amazon to nominate at least three candidates for election to the Board;

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 45

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

7.      a proposal to appoint additional independent board members with established reputations in the IT/biometrics industry and with substantial experience in governance, risk, compliance, cybersecurity, and consumer privacy issues;

8.      a proposal to enhance and/or augment the audit, risk and compliance committees of the Board to oversee internal controls and compliance processes;

9.      a proposal to ensure that the Chief Compliance, Risk and Legal Officer(s) and other company leadership have (a) necessary subject matter and regulatory expertise; (b) direct reporting authority to the Board; and (c) adequate autonomy and resources to carry out their responsibilities;

10.     a proposal to review and implement revised codes of conduct, policies and procedures, training, integrity hotlines, auditing and monitoring processes and procedures;

11.     a proposal to review and implement policies and procedures for escalating internal and regulatory issues internally and to the Board; and

12.     a proposal to review and implement the confidential reporting structure and investigative process of complaints within the company;

G.      Directing Defendants to establish, maintain, and fully fund effective corporate governance and compliance programs to ensure that Amazon's directors, officers, and employees do not engage in wrongful or illegal practices;

H.      Granting additional appropriate equitable and/or injunctive relief to remedy Defendants' misconduct, as permitted by law;

I.      Awarding Plaintiff the costs and disbursements of this action, including reasonable attorneys' and experts' fees and expenses; and

J.      Granting such other and further relief as this Court deems just and equitable.

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 46

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821

1

**JURY DEMAND**

2

Plaintiff demands a trial by jury as to all issues so triable.

3

Respectfully submitted, this 26th day of April, 2022.

4

*/s/ Gregory F. Wesner*

5

Gregory F. Wesner, WSBA No. 30241
HERMAN JONES LLP

6

15113 Washington Ave NE
Bainbridge Island, WA 98110

7

Tel.: (206) 819-0821
gwesner@hermanjones.com

8

9

John C. Herman (to seek admission *pro hac vice*)
HERMAN JONES LLP

10

3424 Peachtree Road, N.E. Suite 1650
Atlanta, GA 30326

11

Tel.: (404) 504-6500
Fax: (404) 504-6501

12

jherman@hermanjones.com

13

*Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

26

VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 47

27

28

1

### **<u>VERIFICATION</u>**

2       I, STEPHEN G. NELSON, hereby verify that I am familiar with the allegations in the

3   Verified Stockholder Derivative Complaint ("Complaint"), and that I have authorized the filing of

4   the Complaint and that the foregoing is true and correct to the best of my knowledge, information,

5   and belief.          .

6

7       Executed this  26th  day of April, 2022.

8   _____
    STEPHEN G. NELSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27   VERIFIED STOCKHOLDER DERIVATIVE COMPL. - 48

28

HERMAN JONES LLP
15113 Washington Ave. NE
Bainbridge Island, WA 98110
206.819.0821