THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

IN RE AMAZON.COM, INC.
SHAREHOLDER DERIVATIVE
LITIGATION

CASE NO. C22-0559-JCC

ORDER

This matter comes before the Court on Defendants' motion to dismiss (Dkt. No. 45). Having thoroughly considered the parties' briefing and the relevant record, the Court finds oral argument unnecessary and hereby GRANTS in part and DENIES in part the motion for the reasons explained herein.

I.   **BACKGROUND**

This is a shareholder derivative action against nineteen current and former Amazon.com, Inc. directors and officers , seeking to remedy Defendants' alleged breaches of fiduciary duties, waste of corporate assets, and unjust enrichment. (*See* Dkt. No. 40 at 2.)[1] Shareholders Stephen G. Nelson and Francis Gimbel, Jr. ("Plaintiffs") allege Defendants breached their fiduciary duties in three distinct ways. First, they allegedly caused Amazon to violate privacy laws by

---

[1] Amazon is named as the nominal defendant in this case solely in a derivative capacity. (*See id.* at 53.) Accordingly, the Court refers to the individual defendants in this case as "Defendants."

regularly receiving, storing, and selling employee and user personal information, including biometric information, without consent. (*Id.* at 3.) Second, they allegedly caused Amazon to engage in anticompetitive practices on its e-commerce platform by (a) entering into contract with third party sellers that inflate prices for consumers, while simultaneously discouraging sellers from offering their products at lower prices through other retailers, and (b) using third party sellers' non-public data to give Amazon's private-label products preference over competing products. (*Id.*) Third, Defendants misled investors regarding Amazon's alleged anticompetitive conduct and the overexpansion of its e-commerce business. (*Id.*) According to Plaintiffs, these actions (and inaction) exposed Amazon to heightened risks of regulatory scrutiny, government investigations, and legal exposure. (*Id.* at 4.) Furthermore, Defendants' alleged breaches resulted in waste of corporate assets and unjust enrichment at the company's expense. (*Id.* at 66.) Accordingly, Plaintiffs seek, among other things, damages, restitution, disgorgement of profits, and injunctive relief. (*Id.* at 67–68.) Defendants, in turn, move to dismiss under *forum non conveniens* and for failure to plead demand futility under Rule 23.1. (*See* Dkt. No. 45.)

## II.   DISCUSSION

### A.   Forum Non Conveniens

"[T]here is ordinarily a strong presumption in favor of the plaintiff's choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 (1981). And although "[a] foreign plaintiff's choice is entitled to less deference" than a home plaintiff's, "less deference is not the same thing as no deference." *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1227 (9th Cir. 2011) (quoting *Ravelo Monegro v. Rosa*, 211 F.3d 509, 511 (9th Cir. 2000)).

A party moving to dismiss on *forum non conveniens* grounds must show (1) that an adequate alternative forum exists, and (2) that the balance of public and private interest factors favors dismissal. *Loya v. Starwood Hotels & Resorts Worldwide, Inc.*, 583 F.3d 656, 664 (9th

Cir. 2009) (quoting *Lockman Found. v. Evangelical Alliance Mission*, 930 F.2d 764, 767 (9th Cir. 1991)). In this case, only the second *forum non conveniens* prong is in dispute: whether the balance of public and private interest factors favors a different forum.

### 1. Public Interest Factors

The public interest factors include: (1) the local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the burden on local courts and juries; (4) court congestion; and (5) the costs of resolving a dispute unrelated to a particular forum. *Carijano*, 643 F.3d at 1232 (quoting *Boston Telecomms. Grp. v. Wood*, 588 F.3d 1201, 1211 (9th Cir. 2009)). Here, the public interest factors weigh against dismissal.

First, Washington has a significant interest in the lawsuit.[2] Although Amazon is a Delaware corporation and this lawsuit involves claims governed by Delaware law, (*see* Dkt. No. 45 at 14), Amazon is headquartered in Washington, is one of the state's largest employers, and continuously engages in substantial business activity in the state. (Dkt. No. 47 at 14.) And while some of the alleged wrongdoing occurred in elsewhere, a substantial portion allegedly occurred here (and none allegedly occurred in Delaware). (Dkt. No. 40 at 5.) Accordingly, the first factor weighs against dismissal. *See Peach v. Shopshire*, 2006 WL 456772, slip op. at 9–10 n.14 (W.D. Wash. 2006) ("Washington has more than a minimal interest in adjudicating an action involving a business engaged in continuous and substantial business activity within its borders.").

Second, Defendants fail to adequately demonstrate that litigation in Washington would burden local courts and juries or contribute to court congestion. Instead, they vaguely assert "the

---

[2] As to this first factor, "[t]here appears to be a difference of opinion about whether it is appropriate to compare the state interests, or whether this factor is solely concerned with the forum where the lawsuit was filed." *Boston Telecomms. Grp.*, 588 F.3d at 1233 n.3; *compare Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1182 (9th Cir. 2006) (asking whether "there is an identifiable local interest in the controversy, not whether another forum also has an interest"), *with Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001) (balancing the interests of the two forums). Regardless, the Court concludes this factor weighs against dismissal.

1  Delaware Court of Chancery operates entirely without juries, meaning there is zero risk of

2  imposing an avoidable burden of jury service." (Dkt. No. 45 at 14.) But although "[j]ury duty is a

3  burden that ought not to be imposed upon the people of a community which has no relation to the

4  litigation," *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508–09 (1947), Washingtonians have a

5  strong interest in a case involving one of the state's largest (if not the largest) employers.

6  Furthermore, that Delaware is "devoting its resources to a closely related [derivative] suit," (*see*

7  Dkt. No. 45 at 15), does not alter the Court's conclusion. "[T]he U.S. Supreme Court has never

8  noted the fact of pending litigation in an alternative forum as a relevant factor in a *forum non*

9  *conveniens* analysis." *Peach*, 2006 WL 456772, slip op. at 9. And even if it did, Defendants'

10  argument is undermined by the pendency of multiple Washington lawsuits against the same

11  defendants.[3] Accordingly, the third and fourth factors are, at best, neutral.

12       Third, the Court is unpersuaded by Defendants' vague contention that "the costs of

13  resolving this dispute are more appropriately borne in Delaware" based on the "significant

14  connection to Delaware." (Dkt. No. 45 at 15.) This is no more than a regurgitation of their

15  argument regarding the first factor, which the Court rejects for the same reasons.

16       Finally, the Court acknowledges that the Delaware Court of Chancery may be more

17  familiar with Delaware governing law. But "this factor alone is not sufficient to warrant

18  dismissal when a balancing of all relevant factors shows that the plaintiff's chosen forum is

19  appropriate." *Piper Aircraft*, 454 U.S. at 260 n.29. Indeed, "[f]ederal courts apply foreign law

20  routinely, and adequate procedures have been developed for that purpose." *Peach*, 2006 WL

21  456772, slip op. at 10.

22       For those reasons, the Court finds the public interest factors weigh against dismissal. *See*

23  *id.* at 9–10 n.14 (declining to dismiss on *forum non conveniens* grounds where the defendant

24  "conduct[ed] substantial business activity in Washington," despite the "strong likelihood that

25

26  _____

[3] *See, e.g.*, *Joyce v. Amazon, Inc. et al.*, No. 2:22-cv-0617 (W.D. Wash.); *FTC v. Amazon.com, Inc.*, No. 2:23-cv-1495-JHC (W.D. Wash.).

1   B.C. law will apply").

2          2.   Private Interest Factors

3          The relevant private interest factors include: (1) the parties' and witnesses' residence;

4   (2) the forum's convenience to the litigants; (3) whether unwilling witnesses can be compelled to

5   testify; and (4) all other practical problems that make trial of a case easy, expeditious, and

6   inexpensive. *Carijano*, 643 F.3d at 1229 (citing *Boston Telecomms.*, 588 F.3d at 1206–07). The

7   parties agree the remaining factors—access to physical evidence, the cost of bringing witnesses

8   to trial, and the enforceability of the judgment—are neutral. (Dkt. Nos. 45 at 13, 47 at 6 n.9.)

9   Here, like the public factors, the private factors weigh against dismissal.

10         First, nine of the nineteen defendants reside in Washington; whereas, not a single

11  individual party or witness resides in Delaware. (Dkt. No. 47 at 13.)[4] And although neither

12  plaintiff is a Washington resident, they filed here, (*see* Dkt. Nos. 1, 40), so are ready and willing

13  to litigate in Washington. *See In re Air Crash at Madrid, Spain, on Aug. 20, 2008*, 893 F. Supp.

14  2d 1020, 1033 (C.D. Cal. 2011). Second, and relatedly, Washington is likely a more convenient

15  forum since it is home to the Amazon headquarters, nine individual defendants, and the bulk of

16  the witnesses. *Creative Tech., Ltd. v. Aztech Sys. Pte., Ltd.*, 61 F.3d 696, 703 (9th Cir. 1995.

17  Third, Defendants fail to identify any unwilling witnesses, let alone that such witnesses cannot

18  be compelled to testify in Washington. (*See* Dkt. No. 45 at 13.) Accordingly, the third factor, at

19  best, should be discounted. *See Carijano*, 643 F.3d at 1231.[5]

20

21  ────────────────

    [4] Defendants cannot seriously contend that because *some* individual defendants reside closer to
22  Delaware than Washington, the first private factor weighs in favor of dismissal. (*See* Dkt. No. 45
    at 13.) If the Court were to measure this factor based on proximity (without reference to the
23  individual's residence in the forum state), most of the individual defendants live closer to
    Washington (with two in California and nine in Washington). (*See* Dkt. No. 40 at 5–10.)

24  [5] Defendants also note "the difficulty of obtaining personal jurisdiction over all defendants in this
    forum." (Dkt. No. 49 at 7.) But since Defendants raise this argument for the first time on reply,
25  the issue is waived and the Court need not consider it. *See United States ex rel. Meyer v. Horizon
    Health Corp.*, 565 F.3d 1195, 1199 n.1 (9th Cir. 2009). Accordingly, Plaintiffs' request to strike
26  this argument (*see* Dkt. No. 52) is moot.

Finally, Defendants fail to adequately identify other practical considerations that make trial easier and more expeditious in Delaware. Instead, their sole argument is that Plaintiffs' primary counsel is based in Georgia and Defendants' primary counsel is based in New York, both of which are closer to Delaware. (Dkt. No. 45 at 13.) But as Plaintiffs aptly note, "Plaintiffs' counsel has an office in Washington, Defendants' counsel is a self-proclaimed international litigation firm, and Defendants are actively litigating related matters in [Washington]." (Dkt. No. 47 at 8.) That defense counsel may *prefer* to litigate on the East Coast does not persuade the Court that dismissal is appropriate in this case. *See Ravelo*, 211 F.3d at 514 (plaintiff not required to choose the "optimal forum"). Accordingly, the Court FINDS that the balance of private interest factors weighs against dismissal.

In sum, Defendants have failed to show that the balance of public and private interest factors weighs in favor of dismissal. For that reason, and in light of the strong presumption in favor of the plaintiff's choice of forum, the Court rejects Defendants' motion to dismiss on *forum non conveniens* grounds..

### B.    Rule 23.1 Demand Futility

Rule 23.1 requires that a derivative plaintiff's complaint state "with particularity" whether a demand for the desired action has been made on the company's directors and the result of that effort, or the reason no demand was made. Fed. R. Civ. P. 23.1 (b)(3). The law of the state of incorporation, here Delaware, governs the countours of demand futility. *See Riley v. Chopra*, 2022 WL 614450, slip op. at 1 (9th Cir. 2022). And it provides that a motion to dismiss for failing to adequately plead demand futility is not intended to test the legal sufficiency of a substantive claim, but rather "to determine who is entitled, as between the corporation and its shareholders, to assert the plaintiff's underlying substantive claim on the corporation's behalf." *Levine v. Smith*, 1989 WL 150784, slip op. at 5 (Del. Ch. 1989), *aff'd* 591 A.2d 194 (Del.

1991)).[6]

In this case, because Plaintiffs did not make a pre-suit demand on the board, the question before the Court is whether demand is excused as futile. (*See* Dkt. No. 40 at 53.) Under Delaware law, demand is futile if, "on a director-by-director basis," a majority of the board (1) received a "material personal benefit" from the misconduct alleged in the complaint, (2) "faces a substantial likelihood of liability" on any of the claims in the complaint, or (3) "lacks independence" from someone who received such a benefit or who would face such likelihood of liability. *Zuckerberg*, 262 A.3d at 1059.[7]

In this case, Plaintiffs identify two grounds that excuse their obligation to make a demand on Amazon's board. First, they allege that each board member faces a substantial likelihood of liability for failing to act in the face of a known duty to act, failing to adequately monitor the company's legal compliance, and knowingly disseminating false information. (Dkt. No. 40 at 54–57, 47 at 18.)[8] Second, they allege that each board member lacks independence. (*Id.* at 53–54, 57–63.) The Court addresses each allegation in turn.

---

[6] "When considering a motion to dismiss a complaint for failing to comply with Rule 23.1, the Court does not weigh the evidence, must accept as true all of the complaint's particularized and well-pleaded allegations, and must draw all reasonable inferences in the plaintiff's favor." *United Food & Com. Workers Union & Participating Food Indus. Emps. Tri-State Pension Fund v. Zuckerberg*, 262 A.3d 1034, 1048 (Del. 2021). "Because Rule 23.1 requires a heightened pleading standard, however, conclusory allegations not supported by allegations of specific fact may not be taken as true." *Genworth Fin., Inc. Consol. Derivative Litig.*, 2021 WL 4452338, slip op. at 12 (Del. Ch. 2021) (citations and quotations omitted).

[7] Amazon's board consists of eleven members: Jeffrey Bezos, Andrew Jassy, Keith Alexander, Edith Cooper, Jamie Gorelick, Daniel Huttenlocher, Judith McGrath, Indra Nooyi, Jonathan Rubinstein, Patricia Stonesifer, and Wendell Weeks. (Dkt. No. 40 at 53.) Accordingly, Plaintiffs must establish demand futility as to at least six members.

[8] More specifically, Plaintiffs allege that board members breached their fiduciary duties by consciously causing or failing to prevent the company from engaging in improper acts. This includes, among other things, failing to ensure compliance with relevant laws and regulations, failing to heed and act upon red flags indicating violations, failing to maintain adequate oversight necessary to prevent or correct improper statements, affirmatively making, allowing, and/or failing to correct improper statements in SEC filings, and awarding senior executives lavish compensation packages despite their knowledge of misconduct. (*See* Dkt. No. 40 at 54, 64.)

1       1. <u>Substantial Likelihood of Liability</u>

2           *a. Failure to Act and/or Maintain Oversight*

3     A breach of fiduciary duty claim challenging a board's oversight is commonly known as

4 a *Caremark* action. *See In re Caremark Int'l*, 698 A.2d 959 (Del. Ch. 1996).[9] This is "possibly

5 the most difficult theory in corporation law upon which a plaintiff might hope to win a

6 judgment." *Caremark*, 698 A.2d at 967. To plead substantial likelihood of liability for such

7 failure, a plaintiff must allege particularized facts that (1) "the directors utterly failed to

8 implement any reporting or information system or controls," or (2) "having implemented such a

9 system or controls, consciously failed to monitor or oversee its operations." *Stone ex rel.*

10 *AmSouth Bancorporation v. Ritter*, 911 A.2d 362, 369 (Del. 2006). And to establish liability

11 under the second prong—failure to monitor—a complaint must allege "(1) that the directors

12 knew or should have known that the corporation was violating the law, (2) that the directors

13 acted in bad faith by failing to prevent or remedy those violations, and (3) that such failure

14 resulted in damage to the corporation." *Rojas on behalf of J.C. Penney Co., Inc. v. Ellison*, 2019

15 WL 3408812, slip op. at 10 (Del. Ch. 2019) (citations omitted). "The typical way to plead

16 [knowledge] is to allege facts demonstrating that the board was alerted to evidence of illegality—

17 the proverbial 'red flag.'" *Id.*

18     Here, Plaintiffs proceed under the second *Caremark* prong[10] and identify several "red

19 flags" in an attempt to establish knowledge: (i) that Amazon Web Services ("AWS") and the

---

[9] The parties characterize the nature of Plaintiffs' claims somewhat differently. Plaintiffs initially pled this case as a breach of fiduciary duties, while Defendants' framed the claims as arising under *Caremark*. (*See generally* Dkt Nos. 40, 45.) In response, Plaintiffs did not challenge *Caremark's* applicability but instead referred to their claim broadly as a "failure of oversight" type of claim, with the governing standard being whether Plaintiffs "demonstrate[] . . . [the directors'] intentional failure to act in the face of a known duty to act, demonstrating a conscious disregard for his duties[.]" (Dkt. No. 47 at 18) (citing *In re Countrywide Fin. Corp. Derivative Litig.*, 554 F. Supp. 2d 1044, 1077 (C.D. Cal. 2008) (quotations omitted)). For the reasons discussed below, the Court finds Plaintiffs' allegations are insufficient under either standard.

[10] This is because Plaintiffs have not alleged that a majority of the directors failed to implement any oversight system under the first *Caremark* prong. (*See generally* Dkt. No. 40.)

company's anticompetitive practices are "core operations" of the company, thereby raising an inference of directors' knowledge; (ii) regulators' and lawmakers' investigations of Amazon's business practices; (iii) numerous shareholder and consumer class actions against Amazon for privacy and antitrust violations; and (iv) multiple shareholder proposals requesting independent reports on the risks posed by AWS, each of which the board rejected. (Dkt. No. 47 at 8.) For the reasons discussed below, the Court finds that Plaintiffs fail to plead particularized facts showing the directors knew or should have known that the corporation was violating the law.

As an initial matter, Plaintiffs' reliance on the "core operations" doctrine is unpersuasive. "In derivative actions like this, courts have repeatedly held that a plaintiff must allege more than that directors should have known or must have known about matters relating to the corporation's core business." *In re Coinstar Inc. S'holder Derivative Litig.*, 2011 WL 5553778, slip op. at 4 (W.D. Wash. 2011) (quotations and citations omitted). And here, Plaintiffs' sole allegations are that AWS has become Amazon's "most profitable business segment" and that "shareholders repeatedly raised AWS's privacy violations via shareholder proposals." (Dkt. No. 47 at 18–19.)[11] But the mere profitability of AWS does not automatically indicate directors' knowledge of unlawful activities. *See South Ferry LP v. Killinger*, 542 F.3d 776, 785 (9th Cir. 2008) ("Where a complaint relies on allegations that management had an important role in the company but does not contain additional detailed allegations about the defendants' actual exposure to information, it will usually fall short of [establishing knowledge.]"). Similarly, shareholders' generalized requests that a company assess legal risks, without more, are insufficient to show the directors knew or should have known of unlawful activity. *See South Ferry LP #2 v. Killinger*, 687 F. Supp. 2d 1248, 1257–62 (W.D. Wash. 2009) (finding scienter where plaintiff's allegations were supported by directors' statements demonstrating they had access to the information on which

---

[11] In the proposals, the shareholders requested that the board commission an independent study "[t]he extent to which [certain Amazon] technology may endanger, threaten, or violate privacy and or civil rights." (*Id.* at 19.)

the statements were based). Accordingly, the "core operations" doctrine does not apply.

Plaintiffs' remaining "red flags" similarly fall short. As Defendants correctly note, "the mere existence of regulatory investigations or litigation do not necessarily demonstrate that a corporation's directors knew or should have known that the corporation was violating the law." *In re Alphabet Deriv. S'holder Litig.*, 2022 WL 1045642, slip op. at 5 (N.D. Cal. 2022). And here, Plaintiffs do little more than "catalog the ongoing investigations into [Amazon's] alleged wrongdoing, and then assert that the thickness of the catalog demonstrates that [Amazon's] conduct was so egregious and widespread that the [d]irectors certainly must now face at least a substantial likelihood of personal liability for having ignored the red flags." *See In re Intel Corp. Derivative Litig.*, 621 F. Supp. 2d 165, 175 (D. Del. 2009). This is insufficient, particularly where plaintiffs fail to allege particularized facts showing the directors "consciously failed to act" after being notified of allegedly illegal conduct. *See Rojas on behalf of J.C. Penney Co., Inc. v. Ellison*, 2019 WL 3408812, slip op. at 11 (Del. Ch. 2019).

In sum, the alleged red flags are not so severe that the directors now face a substantial likelihood of liability for allegedly ignoring them, let alone that they consciously caused the violations. At most, the directors face a "mere threat" of liability, which is insufficient to establish demand futility. *See Aronson v. Lewis*, 473 A.2d 805, 815 (Del. 1984). Accordingly, the Court rejects Plaintiffs' failure to act or maintain oversight theory.

### b. *Misstatements & Omissions*

Plaintiffs further contend directors faced a substantial likelihood of liability for making "materially false and misleading statements and/or omissions" regarding Amazon's alleged anticompetitive conduct and fulfillment capacity. (Dkt. No. 40 at 24, 54, 64.) To show a substantial likelihood of liability "based on a disclosure violation, plaintiffs must plead facts that show that the violation was made knowingly or in bad faith, a showing that requires allegations regarding what the directors knew and when." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 134 (Del. Ch. 2009).

Here, Plaintiffs point to several alleged misstatements and omissions. (Dkt. No. 40 at 24–35, 43–44.)[12] The vast majority of them, though, were made by non-directors. (*See infra* note 12.) And assuming the statements were indeed false or misleading, nowhere in the amended complaint do Plaintiffs allege how any director acted in bad faith by approving the them, nor do they specify "what the directors knew and when." *See In re Citigroup*, 964 A.2d at 132–34 ("[D]irectors of Delaware corporations are fully protected in relying in good faith on the reports of officers and experts."). In some instances, Plaintiffs fail to allege that the directors "were even aware" of the alleged misstatements. *See id.* at 133–34.

Accordingly, Plaintiffs fail to adequately allege that the directors face a substantial likelihood of liability for the alleged misstatements and/or omissions.

2. Independence

A demand is futile as to an individual director and need not be made if the director "lacks independence" from someone who received a material personal benefit from the alleged misconduct or who would face a substantial likelihood of liability. *Zuckerberg*, 262 A.3d at 1059. To prevail on this theory, a plaintiff must plead particularized facts creating "a reasonable doubt that a director is . . . so beholden to an interested director . . . that his or her discretion would be sterilized." *Id.* at 1060. This is a fact-specific inquiry that depends upon the context of a particular case. *Id.* Importantly, though, the existence of a "personal friendship" or "financial ties between the interested party and the director, without more, is not disqualifying." *Id.* at 1061. Instead, the complaint must plead with particularity that "those ties were material" such that "the alleged benefit was significant enough in the context of the director's economic circumstances as

---

[12] This includes, among other things: (1) SEC 10-K filings that allegedly contained misstatements regarding the company's treatment of third party sellers, one of which was signed by a majority of directors and some of which were certified by Defendants Jeff Bezos or Andrew Jassy, Amazon's former and current CEOs respectively; (2) statements by Amazon employees during earning calls regarding third party sellers and the company's order fulfillment capacity; and (3) statements by Bezos and other Amazon employees to a U.S. House of Representatives subcommittee. (*Id.*)

to have made it improbable that the director could perform her fiduciary duties . . . without being influenced by her overriding personal interest." *Orman v. Cullman*, 794 A.2d 5, 23 (Del. Ch. 2002).

Here, Plaintiffs assert demand futility because each board member lacks independence and thus could not impartially consider a litigation demand. (*See* Dkt. No. 40 at 53–54, 57–63.) As a threshold matter, the amended complaint lacks allegations that any director "received a material personal benefit from the alleged misconduct." *See Zuckerberg*, 262 A.3d at 1059. Instead, Plaintiffs assert that Defendants Jeff Bezos and Andrew Jassy lack independence under the NASDAQ definition, and that the remaining directors, in turn, lack independence from Bezos and/or Jassy. (Dkt. No. 40 at 53–54, 57–63.) But as Defendants correctly note, "being deemed 'not independent' for NASDAQ purposes does not bear upon independence for demand futility purposes." *Behrmann v. Brandt*, 2020 WL 4432536, slip op. at 7 (D. Del. 2020), *report and recommendation adopted*, 2020 WL 5752389 (D. Del. 2020). Moreover, even if Bezos and Jassy lacked independence, Plaintiffs fail to adequately plead the required components for an additional four directors (*i.e.*, the requisite majority).

First, Plaintiffs suggest that Defendants Edith Cooper and Indra Nooyi lack independence due to (a) Cooper's two-year service on a museum council alongside Defendant Patricia Stonesifer, and (b) Nooyi's two-year membership on the board of trustees for Massachusetts Institute of Technology's ("MIT"), where Defendant Daniel Huttenlocher's serves as dean. (Dkt. No. 40 at 60.) But such affiliation with another director, without more, is a far cry from the level of entanglement required to show a lack of independence. *See In re CBS Corp. S'holder Class Action & Derivative Litig.*, 2021 WL 268779, slip op. at 30 & n.352 (Del. Ch. 2021; *In re BJ's Wholesale Club, Inc. S'holders Litig.*, 2013 WL 396202, slip op. at 6 n.63 (Del. Ch. 2013).

Second, Plaintiffs point to statements by Defendant Rubinstein stating his admiration for Bezos, calling himself a "reasonable-sized AWS customer," and expressing doubt as to Amazon's monopoly status. (Dkt. No. 40 at 61–62.) This, too, is insufficient to raise reasonable

doubt that Rubinstein is so beholden to Bezos, or that his status as an AWS customer was so material, that his discretion would be sterilized. *See Riley*, 2022 WL 614450, slip op. at 2 (the "professional and social relationships that naturally develop among members of a board" and "investment in the company" do not suffice to show a lack of independence).

Third, Plaintiffs claim Defendant Jamie Gorelick lacks independence because she frequently counsels boards on governance issues in her professional capacity, and based on a statement she made describing Jassy's suitability for CEO. (Dkt. No. 40 at 60.)[13] But Plaintiffs provide no legal or factual authority for the proposition that Gorelick "would be swayed by her desire that boards retain her to represent them, which boards would be unwilling to do if she approves litigation against a director or officer." (*See id.*) And although a director's "exceptionally glowing admiration for a controller combined with a lengthy relationship can cast substantial doubt on her ability to impartially consider a litigation demand," *see In re BGC Partners, Inc. Derivative Litig.*, 2021 WL 4271788, slip op. at 9 (Del. Ch. 2021) (unpublished), Gorelick's mere approval of Jassy does not rise to the level required to overcome the presumption of independence. *See id.* (denying defendants summary judgment where director described controller as an "inspiration," worried that he might get "teary-eyed" speaking about him, and noted how "proud" he is to be associated with him).

Fourth, Plaintiffs point to Defendant Wendell Week's "longstanding, close relationship" with Defendant Huttenlocher from their leadership positions at Corning Corporation, as well as Weeks' company's use of Amazon services. (Dkt. No. 40 at 60–61.) But even if Huttenlocher lacked independence—and the Court is doubtful that he does— "[t]he naked assertion of a previous business relationship is not enough to overcome the presumption of [Weeks'] independence." *See Orman*, 794 A.2d at 27; *Crescent/Mach I Partners, L.P. v. Turner*, 846 A.2d 963, 980–81 (Del. Ch. 2000). Furthermore, Plaintiffs fail to adequately plead that Weeks' business ties to Amazon were "material" such that they would compromise his independence.

---

[13] Gorelick states: "For this moment in our corporate history, [Jassy is] perfect." (*Id.*)

*See In re Dell Techs. Inc. Class V S'holders Litig.*, 2020 WL 3096748, slip op. at 38 n.19 (Del. Ch. 2020) (board member's status as director of a healthcare technology company, which was a long-time customer of Dell, does not support a reasonable inference of dependence upon Dell).

Fifth, Plaintiffs fails to make specific allegations regarding Defendant McGrath's lack of independence. (*See generally* Dkt. No. 40.) Instead, they generally claim the board is "dominated and controlled" by Bezos due to his "immense influence as founder of the company and long tenure as CEO." (*Id.* at 57.) But "conclusory statements that [a director] dominated and controlled other [directors]," without particularized facts, cannot support a finding that "a director is . . . so beholden to an interested director . . . that his or her discretion would be sterilized." *Kablaoui v. Gerar Place Condo. Ass'n*, 2022 WL 1617729, slip op. at 10 (Del. Ch. 2022), *exceptions denied*, 2022 WL 17827089 (Del. Ch. 2022), *aff'd*, 303 A.3d 1219 (Del. 2023) (citing *Zuckerberg*, 262 A.3d at 1060).

This leaves Defendants Alexander, Huttenlocher, and Stonesifer. Even assuming these directors—along with Bezos and Jassy—lack independence, this is insufficient to establish demand futility with respect to a majority of directors. For this reason, and because Plaintiffs fail to show a substantial likelihood of liability for a majority of directors, the Court GRANTS Defendants' motion to dismiss for failure to plead demand futility under Rule 23.1. But "[g]iven the heightened pleading standard plaintiffs must meet to plead demand futility and the policy favoring amendment, the court will grant plaintiffs another opportunity to amend the complaint." *Riley*, 2021 WL 2021461, slip op. at 10.

## III.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss (Dkt. No. 45) is GRANTED in part and DENIED in part. The amended complaint (Dkt. No. 40) is DISMISSED without prejudice and with leave to amend. Any such amendment, which should be limited in scope to the demand futility pleading infirmities described above, must be filed within 30 days of this Order. Otherwise, a judgment will issue.

DATED this 30th day of January 2024.

John C. Coughenour
UNITED STATES DISTRICT JUDGE